Angela Lashone BOOKMAN, Plaintiff,

v.

Dallas Police Officers Sgt. James J. SHUBZDA, John Morris, Ron Brown, Eddie Fuller, David Potts, and Doug Thigpen, Defendants.

Civil Action No. 3:95–CV–1825–D.

United States District Court,
N.D. Texas,
Dallas Division.

Nov. 7, 1996.

As Amended Nov. 21, 1996.

---

Angela Lashone Bookman, pro se.

Edwin P. Voss, Jr. and Sandra C. Camacho, Ass't City Attys., Dallas, TX, for defendants.

FITZWATER, District Judge:

This *pro se* lawsuit filed by a prisoner who was permitted to proceed *in forma pauperis* presents questions concerning the use of *Spears* [1] materials in deciding a motion for summary judgment, and the court's obligation to search the record for genuine issues of material fact.

## I

Plaintiff Angela Lashone Bookman ("Bookman") alleges that six Dallas Police Department ("DPD") officers used excessive force and otherwise violated her constitutional rights during the execution of a narcotics search and arrest warrant at the apartment of her fiancé, Leon Travis Hurd ("Hurd").[2] Bookman brings this action pursuant to 42 U.S.C. § 1983. To the extent she alleges violations of the United States Constitution, it is maintained as a § 1983 action. Her assertion that the officers violated the Texas Constitution alleges a pendent state-law claim.[3]

In response to written questions from the magistrate judge posed during the *in forma pauperis* screening process, Bookman maintains that the officers entered the apartment

---

1. *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985).

2. Although Bookman refers to the apartment as Hurd's in her complaint, it is undisputed from other papers in the record that she also resided there.

3. Because § 1983 provides "a remedy for the vindication of other federal statutory or constitutional rights," *Carbonell v. Louisiana Dep't of Health & Human Resources,* 772 F.2d 185, 188 (5th Cir.1985), Bookman's claim based on the Texas Constitution is not remediable pursuant to § 1983. Assuming *arguendo* that Bookman alleges a state-law assault claim, this too is a pendent claim within the court's supplemental jurisdiction, but is not remediable through a § 1983 action.

illegally because they did not identify themselves as police officers. She also contends that during the course of executing the warrant and arresting her and her fiancé, defendants used excessive force by firing automatic weapons. She complains that defendant Corporal Eddie Fuller ("Corporal Fuller") dragged her across concrete, although she was pregnant, and that defendant Officer Doug Thigpen ("Officer Thigpen") pushed her behind a couch. She avers that she did not resist defendants' attempt to detain her. Bookman also asserts that because of defendants' use of force, she suffered a gash in her side, holes in her foot, bruised knees, and a cut hand. She contends defendants denied her medical care and did not read her rights to her and ensure that she understood them. In particular, she alleges that each officer violated her rights by failing to identify himself as a police officer.

Read liberally, Bookman's complaint appears to state the following constitutional claims: (1) violation of her constitutional right to be free from the use of excessive force in the course of an arrest; (2) unreasonable search; (3) denial of reasonable medical care; and (4) denial of the right to be warned according to the Supreme Court's decision in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and to have these rights explained to her.

Defendants Dallas police officers Sergeant James J. Shubzda ("Sgt. Shubzda"), Officer John Morris ("Officer Morris"),[4] Officer Ron Brown ("Officer Brown"), Corporal Fuller, Officer David Potts ("Officer Potts"), and Officer Thigpen move for summary judgment. They contend they are entitled to summary judgment because Bookman cannot establish that her constitutional rights were violated, and because they are entitled to qualified immunity. Bookman has not responded to the motion.

## II

Before reaching the merits of defendants' motion, the court addresses a threshold procedural question.

### A

■ As noted, Bookman has not responded to defendants' motion for summary judgment. Under the usual jurisprudence, her failure to respond does not permit the court to enter a "default" summary judgment. The court would be permitted, however, to accept defendants' evidence as undisputed. *Tutton v. Garland Indep. Sch. Dist.,* 733 F.Supp. 1113, 1117 (N.D.Tex.1990) (Fitzwater, J.). A summary judgment nonmovant who does not respond to the motion is relegated to her unsworn pleadings, which do not constitute summary judgment evidence. *See, e.g., Solo Serve Corp. v. Westowne Assocs.,* 929 F.2d 160, 165 (5th Cir.1991).

This case presents a different twist. Bookman sought leave to proceed *in forma pauperis.* This required the court to determine that her lawsuit was not frivolous within the meaning of 28 U.S.C. § 1915(d).[5] In evaluating whether she should be permitted to proceed *in forma pauperis,* the magistrate judge submitted a questionnaire for the purpose, among others, of enabling her to set out in greater detail the grounds for her claims. The question presented is whether her responses to these questions, which she made under the penalties of perjury, *see* 28 U.S.C. § 1746, and which are included in the court file in this case, are proper summary judgment evidence. If so, the court must decide whether it is required to consider them despite Bookman's failure to respond to defendants' summary judgment motion.

In *Albritton v. Pittman,* Civil Action No. 3:91–CV–1709–D, 1995 WL 907893 (N.D.Tex. Apr. 7, 1995) (Fitzwater, J.), and *McGriff v. King,* Civil Action No. 3:93–CV–1386–D, 1995 WL 907892 (N.D.Tex. Apr. 28, 1995) (Fitzwater, J.), both *in forma pauperis* cases in which prisoner-plaintiffs failed to respond to summary judgment motions, the court assumed that *Spears* materials were competent

---

4. Officer Morris notes that although he has been named as a defendant, Bookman had not effected service upon him as of September 6, 1996, the date defendants filed this motion.

5. At the time Bookman filed suit, the applicable statute was § 1915(d). The frivolity determination is now made pursuant to § 1915(e)(2)(B).

summary judgment evidence. As the court explained in *Albritton,*

> The purpose of a *Spears* hearing is to determine whether a prisoner alleging a constitutional deprivation should be permitted to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(d). *Spears,* 766 F.2d at 181–82. The evidentiary hearing is "in the nature of a motion for more definite statement." *Id.* The court ascertains at this procedural stage whether the complaint is adequate to permit the prisoner to litigate his claims pursuant to § 1915(d). *Id.* at 182. The prisoner's testimony at the hearing is a more elaborate form of response to questionnaires that courts submit to prisoners so that they may set out in greater detail the bases for their claims. *Id.* at 181 (questionnaire answers "elaborate on the allegations contained in their complaints under Fed.R.Civ.P. 15(a), and do not constitute an independent pleading"). It would appear that the *Spears* testimony is more akin to a pleading than to the summary judgment evidence contemplated by Fed.R.Civ.P. 56(e). Nevertheless, the court will assume that the hearing evidence must be consulted, and that if it otherwise satisfies the requirements of Rule 56(e), it will be deemed adequate to present a genuine issue of material fact.

Slip op. at 3.

Fed.R.Civ.P. 56(c) provides, in relevant part, that summary judgment

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions *on file,* together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

(Emphasis added). Questionnaire answers given in response to a directive of the magistrate judge are unquestionably "on file." Because the responses are made under penalty of perjury, they are at least the equivalent of affidavits, which Rule 56(c) explicitly makes part of the summary judgment record. It is therefore arguable that these responses constitute competent evidence that is part of the summary judgment record.

A potential impediment to interpreting Rule 56(c) in this manner is presented by the fact that summary judgment movants may not be aware of the existence of these responses unless they check the court file. *Spears*-type inquiries are conducted as part of the *in forma pauperis* screening process, so that the court can determine whether suit should be permitted in the first place. These proceedings involve the court and the plaintiff, not the potential defendant. If *in forma pauperis* status is granted, a summons is then issued. Although at this point the defendant knows that he has been sued, unless he examines the court file, he will not be aware of the nature and extent, if any, of the *in forma pauperis* screening process. The court is persuaded that this circumstance is insufficient to exclude *Spears* materials from the Rule 56(c) definition of the summary judgment record. It is also an inadequate reason to construe the Rule's evidentiary gatekeeping function other than according to the materials listed in the Rule and that are "on file" at the time a motion is decided.

■ The better view is that these materials can be relied on as summary judgment evidence. Any prejudice to a summary judgment movant who is unaware of such materials is ameliorated by enforcing the requirement that the nonmovant designate specific facts from these materials in order to warrant their consideration in deciding the motion. This approach promotes the interests of justice. First, a nonmovant is obligated to cite specific facts in response to a summary judgment motion. If *Spears* materials are not cited, the court and the movant need not address them. Second, if facts from these materials are cited, the summary judgment movant has the right to show entitlement to summary judgment notwithstanding these facts. This is no different than the burden that would apply if the nonmovant had filed new affidavits that reiterated the contents of her questionnaire responses or *Spears* hearing testimony. Third, by including these materials in the record, when the nonmovant properly brings them to the court's attention, summary judgment will not be unjustly granted based on the false premise that the evidence does not exist, thus promoting confidence in the fairness of the administration of justice.

Accordingly, the court holds that Bookman's responses to the magistrate judge's questionnaire are part of the summary judgment record.

### B

Notwithstanding this conclusion, the court holds that it need not consider Bookman's questionnaire responses in deciding defendants' motion.

Where, as here, defendants do not have the burden of proof at trial, they may carry their summary judgment obligation by pointing out to the court that there is an absence of evidence to support Bookman's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Once they do so, the burden shifts to the nonmovant to adduce facts showing a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. An issue of fact is genuine if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inference in that party's favor that the evidence allows, would be sufficient to support a verdict in that party's favor. *Hilton v. Southwestern Bell Tel. Co.*, 936 F.2d 823, 827 (5th Cir.1991) (per curiam), *cert. denied*, 502 U.S. 1048, 112 S.Ct. 913, 116 L.Ed.2d 813 (1992). The failure of the non-movant to establish a genuine issue of material fact as to every essential element of her claim mandates entry of summary judgment against her as to that claim. *Dunn v. State Farm Fire & Casualty Co.*, 927 F.2d 869, 872 (5th Cir.1991).

■ In general, Rule 56 obligates the nonmovant to designate the specific facts in the record that create genuine issues precluding summary judgment. It "does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir.1996) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994)); *Nissho–Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir.1988) (on rehearing). To satisfy her burden, the nonmovant is "required to identify specific evidence in the record, and to articulate the

'precise manner' in which that evidence support[s] [her] claim." *Forsyth*, 19 F.3d at 1537 (citing *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992)). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment[.]" *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992).

■ When a party fails to refer to items in the record, the evidence is not properly before the court in deciding whether to grant the motion. *Id.* at 915; *Nissho–Iwai*, 845 F.2d at 1307 (denying rehearing after plaintiff asserted that deposition was of record when district court granted partial summary judgment, and holding that plaintiff "failed to designate, or in any way refer to, the deposition as the source of factual support for her response to [the] motion. Thus, the deposition was never made part of the competent summary judgment record before the district court."). It follows that if a plaintiff fails to respond to a properly supported summary judgment motion, she cannot meet her burden of designating specific facts showing that there is a genuine issue for trial.

■ Because Bookman has not filed a response to defendants' motion, she has neither designated any facts contained in her responses as creating a genuine issue of material fact, nor articulated how they support her claims.

### C

■ Bookman's status as a *pro se* litigant does not alter this result. Although a *pro se* litigant's response to a motion for summary judgment must be read liberally, *McCrae v. Hankins*, 720 F.2d 863, 865 (5th Cir.1983), she is not, as the party with the burden of proof, excused from the requirement that she set forth specific facts supporting her claim. *See Jones*, 82 F.3d at 1338; *cf. Douglass v. United Servs. Auto. Ass'n*, 65 F.3d 452, 455 n. 4 (5th Cir.1995) (cautioning *pro se* litigant, whose brief contained no citations to record, as required by Fed.R.App.P. 28(a)(4) & (6),

that disregard for rules of appellate procedure may result in dismissal), *aff'd on reh'g en banc on other grounds,* 79 F.3d 1415 (1996).

In *Jones* the panel held that district courts are not required to survey the entire record in search of evidence to support the nonmovant's case. *Jones* 82 F.3d at 1338 & n. 3. It nevertheless opted, as did the district court below, to search the record "out of an abundance of caution." *Id.* at 1338 n. 3. The court concludes that similar caution does not dictate surveying the record in the present case. In *Guarino v. Brookfield Township Trustees,* 980 F.2d 399 (6th Cir.1992), the Sixth Circuit rejected the "argument that the trial court must conduct its own probing investigation of the record." *Id.* at 405. The panel succinctly explained the importance of requiring a litigant to respond to an opposing party's motion for summary judgment. The court noted that if responses were not mandatory, there would be

> nothing to discourage the non-moving party, especially one with a reasonably arguable case, from declining (or "forgetting" or being "too busy") to respond to a motion for summary judgment, secure in the knowledge that the district court would be required to excavate all of the presented record, and find for itself any nuggets of evidence that might demonstrate genuine issues of material fact.

*Id.*

There is a point at which even *pro se* litigants must become responsible for the prosecution of their own cases if their claims are to warrant the court's attention. It is not unjustifiably onerous to require *pro se* parties to respond to proper motions for summary judgment. All summary judgment nonmovants shoulder the same obligation. District courts can make appropriate allowances for *pro se* responses that may be somewhat less-artfully written than those of represented parties. This can be accomplished, however, without excusing them from the most basic requirement that they file a response.

## III

Because Rule 56 does not permit a "default" summary judgment, the court's determination that Bookman's responses to the questionnaire have not been properly cited does not of itself entitle defendants to relief. The court must still address whether defendants have demonstrated that they are entitled to summary judgment.

The facts, as established by defendants' uncontroverted affidavits, are as follows. Defendant Corporal Fuller observed a confidential informant ("CI") enter Hurd's apartment for the purpose of making a controlled drug buy. The CI exited the apartment with a baggie that contained a substance that later tested positive as cocaine. The CI told Corporal Fuller that he purchased the cocaine from an unknown black male inside the apartment. The CI gave descriptions of a black male and black female who were occupants of the dwelling. Based on this information, Corporal Fuller prepared an affidavit for a search and arrest warrant and presented it to a magistrate, who issued the warrant. The arrest warrant was for the arrest only of the black male suspect, later identified as Hurd. The search warrant permitted the officers to search Hurd's apartment.

Defendants and another raid team officer were assigned to execute the warrant. After the officers approached the apartment, defendant Officer Thigpen breached the door and the raid team entered. As they did, they repeatedly identified themselves as police officers, yelling "police!" All officers were wearing black raid vests with the word "POLICE" written across the front and back.

Upon entering, defendant Officer Potts encountered Bookman lying on the couch in the living room. Officer Potts directed her to get her hands up. Bookman responded by jumping off the couch and moving toward the area behind the couch. When Corporal Fuller heard Officer Potts speaking to Bookman, he approached the area where they were standing. Meanwhile, defendant Officer Morris entered and secured the kitchen. Officer Thigpen remained posted at the front door. Defendants Sgt. Shubzda and Officer Brown began to approach the rear bedroom and observed the bedroom door close. Offi-

cer Brown and Sgt. Shubzda opened the bedroom door, yelling "police!" Once the door opened, Sgt. Shubzda entered the bedroom. Hurd, who was lying on the floor, began firing at Sgt. Shubzda. When Sgt. Shubzda attempted to return fire, Hurd shot him. Sgt. Shubzda lost control of his weapon, and fell to the ground. Corporal Fuller, who was just approaching the couch, immediately followed Bookman's movements to the area behind the couch in order to take cover from the gunfire. Officer Potts also moved behind the couch for cover. Bookman, who was screaming hysterically, attempted to crawl out from behind the couch toward the center of the living room, in the direction of the gunfire. Corporal Fuller, fearing for Bookman's safety, grabbed her ankle and pulled her back behind the couch. Corporal Fuller and Officer Potts held Bookman behind the couch to ensure her safety. During this time, Officer Brown and Officer Morris pulled the injured Sgt. Shubzda from the line of fire away from the bedroom doorway and into the living room. Officers Brown and Morris then returned fire in Hurd's direction while Officer Thigpen entered the apartment and pulled Sgt. Shubzda outside.

Once the officers retreated from the bedroom doorway, Officer Morris threw a diversionary device into the hallway. Corporal Fuller, who remained crouched behind the couch with Bookman, returned cover fire in the direction of the bedroom, anticipating that Hurd might exit the bedroom and continue shooting at the officers. He then instructed Bookman to begin crawling out from behind the couch and toward the front door. Corporal Fuller yelled for an officer located outside the apartment to assist her to safety. Officer Thigpen, upon hearing Corporal Fuller's request, came back inside the apartment and determined that Bookman, who was still screaming hysterically, needed to be removed from the premises for her own safety. Officer Thigpen then pulled Bookman to the doorway of the apartment and turned her over to Officer Potts. Officer Potts determined that Bookman was still in danger of being hit by gunfire because she was located in the apartment doorway. Officer Potts pulled Bookman, who was still hysterical, to the custody of perimeter officers located near a stairwell that was approximately ten yards away.

After officers took Hurd into custody, a paramedic treated Bookman at the scene for minor abrasions. None of the shots fired during the execution of the warrant hit Bookman. Neither Sgt. Shubzda nor Officer Brown ever made physical contact with Bookman during this incident, and neither was involved in removing her from the apartment.

Defendants did not interrogate her. Officers subsequently transported both Bookman and Hurd to the DPD Crimes Against Persons ("CAPERS") Unit, where detectives questioned them. Defendants were not involved in this process. Bookman gave a written statement that indicated she had knowledge that cocaine was being sold in the apartment, and informed the officers where the controlled substances could be found in the bedroom.

With Hurd's consent, officers conducted a more thorough search of the apartment later that day. During the search, it was determined that Bookman was also a resident of the apartment. Officers found 93 baggies of cocaine, weighing 14.8 grams, in the bedroom. Bookman was subsequently arrested and charged in state court with possession with intent to deliver cocaine. A state judge acquitted her in a bench trial.

## IV

### A

Bookman alleges that one or more defendants used excessive force against her during the execution of the warrant.

 All claims that a law enforcement officer has used excessive force in the course of an arrest are analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). The elements of the claim are (1) a more than *de minimis* injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable. *See Hudson v. McMillian,*

503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992) (overruling "significant injury" requirement in Eighth Amendment excessive force context); *cf. Johnson v. Morel,* 876 F.2d 477, 480 (5th Cir.1989) (en banc) (per curiam) (establishing three-prong test for excessive force claims brought by arrestee, and requiring "significant injury"); *see Knight v. Caldwell,* 970 F.2d 1430, 1432 (5th Cir.1992) (recognizing that *Hudson* overruled Fifth Circuit law requiring significant injury for excessive force claim), *cert. denied,* 507 U.S. 926, 113 S.Ct. 1298, 122 L.Ed.2d 688 (1993). The test of reasonableness under the Fourth Amendment in this context requires

> careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Graham,* 490 U.S. at 396, 109 S.Ct. at 1872. The reasonableness of the use of force is judged from the perspective of a reasonable officer at the scene, rather than with the 20/20 vision of hindsight. *Id.* In cases implicating excessive force, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. *Id.* (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)).

■ Defendants argue that summary judgment is appropriate because the force used against Bookman did not rise to the level of a constitutional violation. The undisputed facts establish that they are correct. Defendants had reason to believe, given the dangerous situation, that Bookman's life was in danger and that immediate action was needed to remove her from harm's way. Further, the evidence establishes that defendants had no knowledge of plaintiff's pregnancy, and that the method they used to remove her from the apartment was reasonable to protect her from the immediate and unpredictable threat of an ongoing fire fight. The calculus of reasonableness embodies allowances for officers forced to make such split-second judgments in the face of uncer-

tain and rapidly evolving situations. *Id.* Defendants did not intend by any of their actions to harm Bookman. The evidence presented establishes, as a matter of law, that the force they employed was objectively reasonable, and did not rise to the level of a constitutional violation.

### B

Bookman asserts that defendants violated her Fourth Amendment rights by conducting a warrantless search of the apartment, without probable cause. It is unclear whether she contends that the initial search without consent, the second search with consent, or both, were improper. For the purposes of this motion, the court will assume that she challenges both searches.

The Fourth Amendment guarantees the right to be secure from unreasonable searches and seizures, and provides that no warrant shall issue except upon probable cause. A search warrant may not issue unless it is based upon probable cause, and the magistrate must have a substantial basis for concluding that probable cause exists. *See Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983).

■ Defendants contend that Bookman cannot show that the search and arrest was a constitutional violation, because they had ample probable cause to secure the search warrant for the apartment. Defendants have submitted uncontroverted evidence that shows that probable cause existed for the initial search. The information Corporal Fuller received from the CI, coupled with his own observations, was sufficient to support the search. Corporal Fuller sent the CI into the apartment with twenty dollars and instructions to purchase crack cocaine. He then observed the CI enter the apartment. *Id.* A few minutes later, the CI exited with a plastic baggie containing a substance that tested positive for cocaine. *Id.* The CI provided a physical description of the man and woman he saw inside and the physical layout of the apartment. *Id.*

Prior to the Court's decision in *Gates,* warrants supported by hearsay statements of an informant were subject to review under the

two-prong test delineated in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The *Aguilar–Spinelli* test required that the affidavit provide the reviewing magistrate with sufficient indicia both of the veracity or reliability of the informant, and of the basis of his knowledge. *United States v. Marbury*, 732 F.2d 390, 395 (5th Cir.1984). *Gates* "articulated a new, more flexible standard for evaluating the facial sufficiency of an affidavit based on a hearsay account of an informant's tip." *United States v. Kolodziej*, 712 F.2d 975, 977 (5th Cir.1983) (per curiam) (on rehearing). Under the totality-of-the-circumstances test of *Gates*, "[t]he informant's veracity, reliability, and basis of knowledge are still relevant and important factors in reviewing the reliability of a tip; however, 'a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.'" *Marbury*, 732 F.2d at 395 (quoting *Gates*, 462 U.S. at 233, 103 S.Ct. at 2329–30).

By his own observations, Corporal Fuller verified the CI's tip that narcotics were present in Hurd's apartment. The initial search of the apartment was supported by probable cause. Further, the method by which defendants effected the initial search warrant was not unconstitutional. The uncontroverted evidence shows that defendants identified themselves as police officers when entering the apartment, and did not exceed the scope of the warrant.

 The subsequent search was also valid. Officers conducted the search with the consent of Hurd, one of the residents of the apartment. Consent is one of the specifically established exceptions to the requirements of a warrant and probable cause. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973) (citations omitted). To demonstrate consent, the government must establish *inter alia* that the consent was voluntary and was given either by the defendant or by a third party who had the ability to furnish valid consent. *U.S. v. Jenkins*, 46 F.3d 447, 451 (5th Cir. 1995). In light of Hurd's consent, the search

was proper. A third party who possesses "common authority over or other sufficient relationship to" the property may consent to its search. *U.S. v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). It is undisputed that Hurd was a primary resident of the apartment. His valid consent would be sufficient to permit the search. Because Bookman has not adduced evidence that Hurd narrowed the scope of his consent in any relevant manner, or that his consent was not given voluntarily, summary judgment is appropriate.

### C

Bookman alleges that she did not receive proper medical attention. Defendants move for summary judgment as to this claim.

 Pretrial detainees are entitled to reasonable medical care unless the failure to supply that care is related to a legitimate governmental objective. *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 474 (5th Cir. 1996). Bookman cannot show that defendants denied her reasonable medical care. Affidavits submitted by two paramedics, John David Cook and Lloyd Moseley ("Moseley"), establish that they treated Bookman at the scene. The paramedics bandaged what Moseley characterizes as "minor abrasions" and checked Bookman's vital signs. After determining that Bookman was "fine," the paramedics cleared her to be transported by the police. There is no indication that the level of medical care provided was not reasonable. Further, Bookman has not established that defendants continued to be responsible for her medical needs after the paramedics began to provide her with care.

### D

 Bookman asserts that defendants violated *Miranda* by failing to read her *Miranda* rights to her, and by failing to confirm that she understood these rights. In *Miranda* the Court held that a person who is subjected to custodial interrogation is entitled to warnings advising her of her constitutional rights. *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612. The summary judgment evidence shows that defendants did not interro-

gate her in any manner in a custodial setting. According to the record, DPD detectives questioned Bookman after she was taken to the CAPERS Unit. She does not allege that this questioning violated her rights, or that any defendant was involved in interrogating her. *Miranda* is simply inapplicable to the defendants whom Bookman has sued.

## V

Having dismissed Bookman's federal-law claims, the court now considers whether to exercise supplemental jurisdiction over her pendent state-law claim.

The court may exercise supplemental jurisdiction over the state claim pursuant to 28 U.S.C. § 1367(a). *See Cedillo v. Valcar Enters. & Darling Del. Co.*, 773 F.Supp. 932, 939–42 (N.D.Tex.1991) (Fitzwater, J.) (discussing supplemental jurisdiction). The court may also decline to exercise such jurisdiction where, as here, the claims that permitted original jurisdiction have dropped out of the case. *See* 28 U.S.C. § 1367(c)(3) (court may decline to exercise supplemental jurisdiction where it has dismissed all claims over which it has original jurisdiction). In the exercise of its discretion, the court declines to consider the merits of defendants' motion on the state-law claim, and instead dismisses it without prejudice.

\* \* \*

Bookman has not introduced evidence sufficient to support a finding that her constitutional rights were violated. There is no need to inquire further whether dismissal would also be appropriate on the grounds of qualified immunity. Defendants' motion for summary judgment is granted as to her federal-law claims, and these claims are dismissed with prejudice. The court dismisses her pendent state-law claim without prejudice.

**SO ORDERED.**