Linda PIPER, Plaintiff,

v.

KIMBERLY-CLARK CORPORATION,
Defendant.

No. 3:95–CV–51.

United States District Court,
E.D. Texas,
Paris Division.

July 14, 1997.

Robert S. Davis, Copper, Flowers, Davis, Fraser & Derryberry, L.L.P., Tyler, TX, for Plaintiff.

John E. McFall, John G. Harrison, McFall Law Firm, Dallas, TX, for Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SCHELL, Chief Judge.

This matter is before the court on Defendant Kimberly–Clark Corporation's ("Defendant") Motion for Reconsideration and Resubmission of Its Motions for Summary Judgment filed on February 18, 1997.[1] Defendant seeks summary judgment on Plaintiff Linda Piper's ("Plaintiff") claims of violations of the Americans with Disabilities Act ("ADA") and Texas Labor Code § 451.001. Plaintiff filed a response and a request for a jury trial on March 20, 1997. The court signed the Order Granting Defendant's Motion for Reconsideration of Motions for Summary Judgment ("Order") on March 21, 1997. Pursuant to the court's Order, Plaintiff filed her Second Supplemental Response to Defendant's Motion for Summary Judgment on April 30, 1997. Upon consideration of the parties' submissions and applicable law, the court is of the opinion that Defendant's Motion for Summary Judgment should be GRANTED.

## BACKGROUND

Defendant Kimberly–Clark manufactures diapers and training pants at its facility in

---

1. Defendant initially filed a motion for partial summary judgment with regard to Plaintiff's claims under the ADA on May 16, 1996. Defendant filed a second motion for summary judgment on September 20, 1996, incorporating by reference Defendant's first motion and expanding the motion to include Plaintiff's claim of retaliatory discharge in violation of the Texas Workers' Compensation Act. The Honorable William Wayne Justice denied Defendant's first motion for partial summary judgment by his September 30, 1996 Order. Defendant's second motion was denied as untimely during an October 2, 1996 pre-trial conference. This action was transferred to this court by Judge Justice's Order of January 21, 1997.

Paris, Texas. Plaintiff Linda Piper began work for Defendant on July 10, 1989. Plaintiff worked as an Assistant Operator from the time of her hire until October 1992. From October 1992 until her termination in July 1994, Plaintiff worked as a Stores Clerk.

Stores Clerks are production support personnel who provide materials, tools, and parts for the mechanics and engineers on the production lines. Stores Clerks are responsible for receiving the large volume of parts and equipment delivered to the facility, for cataloguing and maintaining the inventory, and for filling orders (or picks) from the mechanics or engineers who are in the constant process of repairing or maintaining the seventeen production lines. Plaintiff's job operated on a 12–hour shift, required her to be on her feet "6–8 hours stocking parts, retrieving parts, or working with customers to identify parts", and required bending, reaching, and lifting. Def.'s Mot. for Partial Summ.J. at 2 (citing Pl.'s Dep. Ex. 5 (Physical Assessment of Job Function)).

In March 1994, Plaintiff injured her back while working in Defendant's Paris plant. On June 8, 1994, Plaintiff's treating physician, Dr. George Wharton, imposed the following medical restrictions on her ability to return to work: "Light/medium lifting," "No repetitive bending;" and "Not more than 8 hrs. per day." On or about July 2, 1994, Defendant terminated Plaintiff's employment allegedly because there were no jobs available at the facility that were consistent with her permanent eight-hour restriction.

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. at 2510. The party moving for summary judgment has the burden to show that there is no genuine issue of fact and that it is entitled to judgment as a matter of law. *See id.* at 247, 106 S.Ct. at 2509–10. Because Plaintiff bears the burden of proof at trial on the issues of discrimination and retaliatory discharge, Defendant is not required to produce evidence negating the existence of a material fact; rather Defendant's burden is only to point out the absence of evidence supporting the nonmovant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If Defendant's motion demonstrates such an absence of evidence, "the nonmovant must come forward with evidence which would be sufficient to enable it to survive a motion for directed verdict at trial." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir.) (citation and internal quotations omitted), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). The test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512.

### DISCUSSION

#### I. AMERICANS WITH DISABILITIES ACT

##### A. Applicable Law

Title I of the ADA prohibits employment discrimination against a qualified individual with a disability because of the individual's disability. 42 U.S.C. § 12112(a). Unlawful discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity...." 42 U.S.C. § 12112(b)(5)(A).

A plaintiff bears the ultimate burden of persuading the trier of fact that she has been the victim of illegal discrimination based on her disability. *Aikens v. Banana Republic, Inc.*, 877 F.Supp. 1031, 1036

(S.D.Tex.1995). A plaintiff must first make out a *prima facie* case of an ADA violation by showing that: (1) she suffers from a disability; (2) she is qualified for the job; (3) she was subject to an adverse employment action; and (4) she was replaced by a non-disabled person or was treated less favorably than non-disabled employees. *Daigle v. Liberty Life Insurance Co.*, 70 F.3d 394, 396 (5th Cir.1995). If the plaintiff establishes a *prima facie* case, the employer must come forward with evidence of a legitimate non-discriminatory reason for its action. *Id.* Thereafter, as in all discrimination cases, any inferences arising from a *prima facie* case disappear, and the plaintiff must demonstrate that the employer's articulated reason was à pretext for unlawful discrimination. *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir.1996) (en banc).

*B. Analysis*

With regard to Plaintiff's ADA claim, Defendant moves for summary judgment on three grounds: (1) Plaintiff is not "disabled" within the meaning of the ADA, (2) Plaintiff is not "qualified" for her past position of Stores Clerk; and (3) Plaintiff has not produced evidence that Defendant's articulated reason for her discharge was a pretext for unlawful discrimination. Because the court finds that Plaintiff has not demonstrated by competent summary judgment evidence that she is "disabled" within the meaning of the

ADA, the court need not address the second and third grounds for summary judgment.

Plaintiff contends that she has a "disability" [2] within the meaning of the ADA because she has "a physical ... impairment that substantially limits one or more of the major life activities." 42 U.S.C. § 12102(2)(A).[3] Plaintiff claims a substantial limitation of the major life activity of working.[4] To demonstrate that an impairment "substantially limits" the major life activity of working, an individual must show "significant[ ] restrict[ion] in the ability to perform either a *class of jobs* or a *broad range of jobs in various classes* as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i) (1996) (emphasis added). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.*[5]

■ When determining whether an impairment substantially limits a major life activity, the court reviews the record for evidence of six factors set forth in the ADA regulations. *See Bolton v. Scrivner, Inc.*, 36 F.3d 939, 943 (10th Cir.1994), *cert. denied*, 513 U.S. 1152, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995).[6] The first three factors "should be considered" when determining whether an impairment substantially limits a major life activity, 29 C.F.R. § 1630.2(j)(2), and the additional three factors "may be considered" when determining whether an impairment

---

**2.** "The term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

**3.** Plaintiff also claims, almost in passing, that she has a record of an impairment and that Defendant regarded her as having an impairment. Pl.'s Second Supplemental Resp. to Def.'s Mot. for Summ. J. at 15–16.

**4.** "Major life activities" means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. § 1630.2(i). Other major life activities could include lifting, reaching, sitting, or standing. *Id.* § 1630, Appendix to Part 1630—Interpretive Guidance on Title I of the ADA, § 1630.2(i).

**5.** *See Welsh v. City of Tulsa*, 977 F.2d 1415, 1417 ( 10th Cir.1992) ("While the [Rehabilitation Act] regulations define a major life activity to include working, this does not necessarily mean working at the job of one's choice."). Although Welsh was a Rehabilitation Act case, "[t]he legislative history of the ADA indicates that Congress intended that the relevant caselaw developed under the Rehabilitation Act be generally applicable to the term 'disability' as used in the ADA." *Bolton v. Scrivner, Inc.*, 36 F.3d 939, 943 (10th Cir.1994) (citation and internal quotations omitted), *cert. denied*, 513 U.S. 1152, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995).

**6.** Although the regulations promulgated by the EEOC under the ADA are not binding, they do provide the court with significant guidance. *See Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir.1995).

substantially limits the major life activity of working. *Id.* § 1630.2(j)(3)(ii).

The three factors that "should be considered" when determining whether an impairment substantially limits a major life activity are: "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Id.* § 1630.2(j)(2).

The three additional factors that "may be considered" when an individual claims substantial limitation in the major life activity of working are:

(A) The geographical area to which the individual has reasonable access;

(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that, geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

*Id.* § 1630.2(j)(3)(ii); *see Bolton v. Scrivner, Inc.,* 36 F.3d 939, 944 & n. 3 (10th Cir.1994) (affirming district court's grant of summary judgment in favor of defendant employer where plaintiff employee failed to produce evidence showing a significant restriction in his "ability to perform either a class of jobs or a broad range of jobs in various classes"), *cert. denied,* 513 U.S. 1152, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995).[7]

■ In support of her contention that she is "disabled" within the meaning of the ADA, Plaintiff presents the following affidavit testimony of her treating physician, Dr. George Wharton:

Ms. Piper has at least a 7% whole body impairment rating ... Ms. Piper may occasionally lift 35 pounds, frequently lift 20 pounds and constantly lift 1 to 5 pounds. She cannot work in any capacity that requires repetitive bending and may not work more than eight hours per day. These restrictions are permanent in nature. This places Ms. Piper in the light to light medium category. Ms. Piper should not repetitively squat, stoop, push or pull and must be able to stand and/or change positions as needed.

Order of September 30, 1996 at 4 (quoting Aff. of Dr. Wharton ¶ 6). While this evidence certainly establishes that Plaintiff has an impairment, Dr. Wharton's assessment of Plaintiff's condition alone is insufficient to create a genuine issue of material fact as to whether Plaintiff's impairment rises to the level of a "disability" within the meaning of the ADA. Therefore, the court finds it necessary to look for evidence of the three factors that "may be considered" in order to determine the number and type of jobs from which Piper is disqualified because of her physical impairment.

■ In addressing the "may be considered" factors, Plaintiff presents the affidavit and deposition testimony of Dr. Wharton and Nan Rose, an employee of the Texas Rehabilitation Commission. According to Dr. Wharton, "Ms. Piper's impairment is not simply an inability to perform a single or particular job; instead, Ms. Piper's impairment places her far enough outside the norm as to make it impossible or unusually difficult for Ms. Piper to perform work that could usually be done by most other people." Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. 3 at ¶ 4 (Aff.

---

7. Bolton only introduced evidence that went to the nature and severity, duration, and impact of Bolton's impairment (the "should be considered" factors) *Bolton,* 36 F.3d at 944. For purposes of appellate review, the *Bolton* court assumed that Bolton's evidence demonstrated a relatively severe impairment, of long term duration, producing a permanent or long term impact. *Id.* at 944

n. 3. According to the Tenth Circuit, however, summary judgment was appropriate because Bolton's evidence did not address his vocational training, the geographical area to which he had access, or the number and types of jobs demanding similar training from which Bolton would also be disqualified. *Id.* at 944.

of Dr. Wharton); *see* Pl.'s Second Supplemental Resp. to Def.'s Mot. for Summ. J., Dep. of Dr. Wharton at 53 (stating that Piper is precluded from "a class of jobs which required constant bending, pushing, pulling or activities in the range of one to five pounds; frequent bending and lifting activities in the range of twenty pounds and occasional bending and lifting activities inn the range of thirty-five pounds and which required any bending on a repetitive basis or chose jobs which exceeded any of those categories."). Ms. Rose states that "Linda Piper's impairment is a significant impairment, and she has a significant restriction in the ability to perform a class of jobs and a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." Pl.'s Supplemental Resp. to Def.'s Mot. for Summ. J. Ex. 2 at ¶ 7 (Aff. of Nan Rose); Pl.'s Second Supplemental Resp. to Def.'s Mot. for Summ. J. at 11 (citing Dep. of Nan Rose at 128–29). This affidavit and deposition testimony, however, is insufficient to raise a genuine issue of material fact because it is conclusory in nature and often merely parrots the language of the ADA regulations.[8]

In addition to the conclusory nature of the statements found in the affidavit and deposition testimony with regard to Plaintiff's alleged inability to perform a class of jobs and a broad range of jobs, Plaintiff cites the deposition testimony of Nan Rose for the proposition that the geographical area to which Plaintiff has reasonable access has few job opportunities for which Plaintiff is quali-

fied. Pl.'s Second Supplemental Resp. to Def.'s Mot. for Summ. J. at 11–12. According to Ms. Rose, jobs are not very prevalent in Paris for a 45–year old white female with disk desiccation from a prior work-related injury. *Id.,* Dep. of Nan Rose at 131–32.[9] Although Ms. Rose's deposition testimony is arguably relevant, it at best paints an ambiguous picture of the job market in Lamar County and its surrounding area. Even assuming that the geographical area to which Plaintiff has reasonable access has few job opportunities regardless of a prospective employee's impairment, Plaintiff has still failed to produce evidence showing the number and types of jobs from which Plaintiff is disqualified due to her impairment. In other words, Plaintiff's summary judgment evidence does not satisfy the court's concern that Plaintiff's physical impairment merely disqualifies her from her past position as Stores Clerk.

Because Plaintiff has failed to produce evidence establishing the number and types of jobs in Lamar County and the surrounding area from which Plaintiff is disqualified due to her impairment,[10] the court finds that Plaintiff has not created a genuine issue of material fact as to whether she is substantially limited in the major life activity of working, and, therefore, "disabled" within the meaning of the ADA. *See Bridges v. City of Bossier,* 92 F.3d 329, 333–34 (5th Cir.1996) (affirming district court's finding that Bridges was substantially limited in only a narrow range of jobs, specifically firefighting, where no record evidence supported Bridges' contention that he was substantially limited

8. Facts, not buzzwords, defeat a motion for summary judgment. In response to a motion for summary judgment, a plaintiff is required to point out specific facts showing that there is a genuine issue for trial because summary judgment is designed to go beyond the pleadings in order to assess the proof and ascertain whether a claim is baseless and should be dismissed or, alternatively, whether a genuine fact issue exists and trial is necessary. *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1196 (5th Cir.1986). "Because the opponent of a summary judgment motion must designate specific facts, it is not enough that he merely restate his claims—general allegations and self-serving conclusions unsupported by specific facts are not adequate." *Castillo v. Bowles,* 687 F.Supp. 277, 280 (N.D.Tex.1988).

9. The court is only concerned with the number and types of jobs from which Plaintiff is disqualified due to her physical impairment, not due to her age, gender, or any other personal characteristic.

10. "The terms 'number and types of jobs' and 'number and types of other jobs'... are not intended to require an onerous evidentiary showing. Rather, the terms only require the presentation of evidence of general employment demographics and/or of recognized occupational classifications that indicate the approximate number of jobs (e.g., 'few', 'many', 'most') from which an individual would be excluded because of an impairment." 29 C.F.R. § 1630, Appendix to Part 1630—Interpretive Guidance on Title I of the ADA, § 1630.2(j).

in a "class of jobs" or "broad range of jobs in various classes"), *cert. denied,* —— U.S. ——, 117 S.Ct. 770, 136 L.Ed.2d 715 (1997); *Bolton v. Scrivner, Inc.,* 36 F.3d 939, 944 (10th Cir.1994) (finding summary judgment appropriate where the plaintiff did not produce evidence addressing his vocational training, the geographical area to which he had access, or the number and type of jobs demanding similar training from which the plaintiff would also be disqualified), *cert. denied,* 513 U.S. 1152, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995).[11]

■ Plaintiff also claims that she is "disabled" within the meaning of the ADA because she has a record of a substantially limiting impairment and Defendant regarded her as having a substantially limiting impairment. Pl.'s Second Supplemental Resp. to Def.'s Mot. for Summ. J. at 15–16. 29 C.F.R. § 1630.2 states:

(k) *Has a record of such impairment* means has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.

(l) *Is regarded as having such an impairment* means:

(1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

(3) Has none of the impairments defined [in this section] but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2 (emphasis in original).

The record is undisputed that Plaintiff had an impairment that limited her to eight-hour work days in the position of Stores Clerk. The record is also undisputed that Defendant knew of this impairment and discharged Plaintiff because she could not fulfill the 12-hour shift requirement of the Stores Clerk

position. *See* Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. 2 at 52 (Dep. of Gary Short) (stating that the only restriction that fell outside of the job requirements of Stores Clerk was the eight-hour restriction); *id.* Ex I at ¶ 8 (Aff. of Linda Piper) ("On June 27, 1994, Peggy from Kimberly–Clark talked to Ahleen Nyhoff. Ahleen Nyhoff said that 12 hour shifts were the problem."). Plaintiff, however, has failed to put forth evidence upon which a factfinder could conclude that she has a record of, or was regarded as having, an impairment that substantially limited her major life activities. Specifically, Plaintiff failed to put forth evidence that her inability to work 12–hour shifts disqualified her from a class of jobs or a broad range of jobs in various classes or that Defendant regarded Plaintiff's inability to work 12–hour shifts as an impairment that disqualified her from a class of jobs or a broad range jobs in various classes. *See Foreman v. Babcock & Wilcox Co.,* 117 F.3d 800, 806 (5th Cir.1997) ("An employer does not necessarily regard an employee as having a substantially limiting impairment simply because it believes that she is incapable of performing a particular job").

Accordingly, summary judgment is appropriate with respect to Plaintiff's ADA claim because Plaintiff is unable to show that she has a "disability" within the meaning of the ADA.

## II. TEXAS RETALIATORY DISCHARGE CLAIM

### A. Applicable Law

"Section 451.001 of the Texas Labor Code is a statutory exception to the Texas common law doctrine of employment-at-will." *Burfield v. Brown, Moore & Flint, Inc.,* 51 F.3d 583, 589 (5th Cir.1995). The statute prohibits an employer from discharging or discriminating against an employee because the employee has filed a workers' compensation claim in good faith. TEX. LAB. CODE § 451.001; *Burfield,* 51 F.3d at 589. Specifically, the statute provides:

---

**11.** *See Bridges,* 92 F.3d at 335 (finding the Tenth Circuit's approach in *Bolton,* 36 F.3d at 942, closer to the Fifth Circuit's understanding of a

substantial limitation on the major life activity of working).

A person may not discharge or in any other manner discriminate against an employee because the employee has:

(1) filed a workers' compensation claim in good faith;

(2) hired a lawyer to represent the employee in a claim,

(3) instituted or caused to be instituted in good faith a proceeding under

Subtitle A; or

(4) testified or is about to testify in a proceeding under Subtitle A.

TEX. LAB. CODE § 451.001. The Texas Legislature enacted § 451.001 "to protect persons who are entitled to benefits under the Worker's Compensation Law and to prevent them from being discharged by reason of taking steps to collect such benefits." *Carnation Co. v. Borner*, 610 S.W.2d 450, 453 (Tex. 1980).

■■■■■ In pursuing a claim under § 451.001, the plaintiff has the burden of establishing a causal nexus between the filing of a workers' compensation claim and his discharge or other adverse action taken by his employer. *Parham v. Carrier Corp.*, 9 F.3d 383, 386 (5th Cir.1993).[12] "The plaintiff need not prove that his quest for workers' compensation was the sole reason for his discharge, but he must establish that it was a determining factor." *Parham*, 9 F.3d at 386. Once the plaintiff has shown a causal link, the employer may rebut the plaintiff's show-ing by demonstrating that the discharge was actually for a reason unrelated to the plaintiff's pursuit of workers' compensation benefits. *Swearingen v. Owens–Corning Fiberglas Corp.*, 968 F.2d 559, 562 (5th Cir.1992). "Thereafter, in order to survive a motion for summary judgment, the burden shifts back to the employee to produce controverting evidence of a retaliatory motive" *Terry v. Southern Floral Co.*, 927 S.W.2d 254, 257 (Tex.App.—Houston [1st Dist.] 1996, n.w.h.). An employer is entitled to summary judgment in a retaliatory discharge suit brought by an employee who has filed a workers' compensation claim when the employer establishes a legitimate, nondiscriminatory reason for the discharge and the employee fails to produce any evidence of a retaliatory motive. *See Texas Division–Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 314 (Tex.1994).

### B. Analysis

■■■■ Defendant contends summary judgment is appropriate as to Plaintiff's retaliatory discharge claim because Plaintiff has failed to present any evidence to establish a causal connection between her discharge and her workers' compensation claim. Def.'s Mot. for Summ. J. at 4. Plaintiff counters this assertion with a laundry list of circumstantial evidence in support of her retaliatory discharge claim. Pl.'s Second Supplemental Resp. to Def.'s Mot. for Summ. J. at 22.[13]

**12.** An employee may show causation by direct or circumstantial evidence, including the reasonable inferences that may be drawn from such evidence. *Investment Properties Management, Inc. v. Montes*, 821 S.W.2d 691, 694 (Tex.App.—El Paso 1991, no writ); *see Palmer v. Miller Brewing Co.*, 852 S.W.2d 57, 61 (Tex.App.—Fort Worth 1993, writ denied). Such evidence includes: (1) knowledge of the claim by those making the decision to terminate; (2) a negative attitude toward the employee's injured condition; (3) failure to follow company policy when disciplining an employee who made a claim; and (4) discriminatory treatment of the employee when compared to the treatment of other employees with the same disciplinary problem. *Id.*

**13.** According to Plaintiff, the following facts constitute ample evidence to avoid summary judgment as to her retaliatory discharge claim:

In the instant case, the Plaintiff was terminated shortly after filing her worker's compensations claim and being diagnosed with a permanent disability; the nurse for the worker's compensation carrier was involved in the process within Kimberly–Clark that led to Plaintiff's termination; the Worker's Compensation Carrier sent Ms. Piper a letter stating that she might lose her job; other employees who had disabilities that were not permanent were accommodated for as long as one year until a job came open for them or other arrangements could be made to accommodate them; the staff at Kimberly–Clark asked Ms. Piper to confirm that her disability was permanent prior to firing her; Kimberly–Clark in Paris is very aggressive in fighting job related injuries and receives awards for good performance in that area; Kimberly–Clark's in-house counsel was involved in conversations with the representatives at Kimberly–Clark in Paris about Ms. Piper prior to terminating her; the company's medical staff at the plant received copies of the Plaintiff's medical records; the adverse employment decision was made by Gary Short who knew of the Plaintiff's worker's compensation

Despite Plaintiff's failure to direct the court to the specific portions of the record which support her claim,[14] the court will assume for purposes of this motion that the record evidence establishes a causal connection between Plaintiff's discharge and her workers' compensation claim.

 With the causal link established, the court must determine if Defendant has produced evidence to rebut Plaintiff's showing by demonstrating that Plaintiff's discharge was for a reason unrelated to her workers' compensation claim. According to Defendant, Plaintiff was discharged because there were no jobs available at the facility that were consistent with her permanent eight-hour restriction. Def.'s Mot. for Summ. J. at 3 ¶ 7 (citing Aff. of Gary Short at ¶ 11; Pl.'s Dep. Ex. 10 (termination letter)). In response, Plaintiff has failed to controvert Defendant's legitimate nondiscriminatory reason for Plaintiff's discharge with evidence of a retaliatory motive. Specifically, Plaintiff has produced no evidence that the 12–hour shift was anything but essential to the function of Stores Clerk.[15] Additionally, Plaintiff has produced no evidence that there were eight-hour jobs available at the plant for which she was qualified at the time of her discharge.[16] With no controverting evidence, summary judgment is appropriate as to Plaintiff's retaliatory discharge claim.

claim; Gary Short had a negative attitude toward Ms. Piper; and Nan Rose, the head of the Texas Rehabilitation Commission in Paris, Texas has testified that Kimberly–Clark has a policy, custom and practice of discriminating against individuals who file worker's compensation claims.
Pl.'s Second Supplemental Resp. at 22.

14. "In general, Rule 56 obligates the nonmovant to designate the specific facts in the record that create genuine issues precluding summary judgment." *Bookman v. Shubzda*, 945 F.Supp. 999, 1004 (N.D.Tex.1996). "When a party fails to refer to items in the record, the evidence is not properly before the court in deciding whether to grant the motion." *Id.* (citations omitted).

15. Plaintiff recognized that the 12–hour shift was part of the job description and produced no

## CONCLUSION

For the foregoing reasons, the court GRANTS Defendant's Motion for Summary Judgment.

evidence indicating that the required hours of attendance were selectively enforced or in any way a marginal function of the job. Def.'s Mot. for Partial Summ. J. Ex B at 40–44, 104 (Dep. of Linda Piper).

16. Instead of controverting Defendant's assertion that no eight hour jobs were available at the time of Plaintiff's termination, Plaintiff argues that Defendant should have used one of the temporary summer hires to fill the remaining four hours in her shift until an eight-hour position became available. Pl.'s Second Supplemental Resp. to Def.'s Mot. for Summ. J. at 7–9. While this argument addresses the now moot issue of whether Defendant could have made a reasonable accommodation, it also implicitly acknowledges that there were no jobs a available at the time of Plaintiff's termination that were consistent with her permanent eight-hour restriction.