**Lisa TREVINO, Appellant,**

v.

**CORRECTIONS CORPORATION OF AMERICA d/b/a Reeves County Law Enforcement Center, Appellee.**

No. 08–92–00127–CV.

Court of Appeals of Texas, El Paso.

March 24, 1993.

Rehearing Overruled April 21, 1993.

Gerald K. Fugit, Odessa, for appellant.

Mary K. Wolf, Austin, for appellee.

Before KOEHLER, BARAJAS and LARSEN, JJ.

## OPINION

KOEHLER, Justice.

This is an appeal from an order granting a summary judgment in favor of the employer in a suit brought by an employee under Tex.Rev.Civ.Stat.Ann. art. 8307c for wrongful termination of the employment relationship in retaliation for having filed a workers' compensation claim six months prior to the date of termination. We reverse and remand.

## FACTUAL BACKGROUND

Reeves County Law Enforcement Center (LEC) is a county owned correctional facility. Corrections Corporation of America (CCA) contracted with Reeves County in September 1988 to manage the facility. Lisa Trevino (Trevino) was an employee first of Reeves County and then of CCA when it took over management of the facility.

On June 18, 1989, Trevino injured her right shoulder while working for CCA at the facility. On July 1, 1989, Trevino went on disability leave and began receiving weekly compensation as well as payment of her medical bills from that date until November 30, 1990. While she was drawing compensation, she received a letter from CCA dated January 3, 1990, informing her that in accordance with CCA's corporate policy concerning injured employees receiving workers' compensation, she was to be terminated effective January 1, 1990. In December 1990, Trevino settled her workers' compensation claim for a lump sum. She then filed this suit in the district court of Reeves County, seeking damages for the wrongful termination of her employment. The trial court granted CCA's motion for summary judgment and rendered a take-nothing judgment against Trevino.

## POINT OF ERROR AND STANDARD OF REVIEW

In a single point of error, Trevino asserts that the trial court erred in granting the summary judgment based upon CCA's claim that it was carrying out a neutral policy of terminating any employee whose workers' compensation period extended beyond six months, and upon the contention that she failed to establish the required causal connection between her termination and her claim for workers' compensation benefits.

When reviewing a summary judgment appeal, this Court must determine whether the successful movant in the trial court carried its burden of showing that there is no genuine issue of a material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546, 548 (Tex.1985). In deciding whether or not there is a disputed fact issue precluding summary judgment, evidence favorable to the non-movant is to be taken as true, and in that connection, every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in her favor. *Nixon*, 690 S.W.2d at 548–49. If the defendant is the movant and it submits summary judgment evidence disproving at least one element of the plaintiff's case, then summary judgment should be granted. *Bradley v. Quality Service Tank Lines*, 659 S.W.2d 33, 34 (Tex.1983); *Rayos v. Chrysler Credit Corporation*, 683 S.W.2d 546, 547 (Tex.App.—El Paso 1985, no writ).

## WRONGFUL TERMINATION

In her petition, Trevino alleged in effect that she was an employee of CCA, that she was injured and filed a workers' compensation claim and that she was wrongfully terminated as a result of her workers' compensation injury and her subsequent treatment, contrary to the provisions of Article 8307c of the annotated Texas statutes, resulting in her damages as alleged. Under the Texas Workers' Compensation Act, "[n]o person may discharge or in any other manner discriminate against any employee because the employee has in good faith filed a claim, hired a lawyer to represent him in a claim, instituted, or caused to be instituted, in good faith, any proceeding under the Texas Workmen's Compensation Act, or has testified or is about to testify in any such proceeding." Tex.Rev.Civ.Stat. Ann. art. 8307c, § 1 (Vernon Supp. Pamphlet 1993).[1]

## CAUSAL LINK

■■■■ To prevail on a claim of wrongful termination under Article 8307c, an employee must establish a causal link between his discharge and the filing of a worker's compensation claim. *Investment Properties Management, Inc. v. Montes,* 821 S.W.2d 691, 694 (Tex.App.—El Paso 1991, no writ); *Hughes Tool Company v. Richards,* 624 S.W.2d 598, 599 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.), *cert. denied,* 456 U.S. 991, 102 S.Ct. 2272, 73 L.Ed.2d 1286 (1982). However, she does not need to show that the workers' compensation claim was the sole cause of her termination; she need only show a causal connection between her discharge and her claim for benefits. *Investment Properties,* 821 S.W.2d at 694; *Azar Nut Company v. Caille,* 720 S.W.2d 685, 687 (Tex.App.—El Paso 1986), *aff'd,* 734 S.W.2d 667 (Tex. 1987). Once the employee has established the causal link, the burden then shifts to the employer to show that the employee was discharged for a legitimate reason. *Hughes,* 624 S.W.2d at 599. Accordingly,

CCA had the burden of showing by appropriate summary judgment proof that there was no causal link between Trevino's compensation claim and her termination, i.e. that the claim was not a determining factor in her discharge. *Azar,* 720 S.W.2d at 687.

■■■■ In a CCA document covering corporate policy with respect to employee leave benefits, dated June 1, 1986, paragraph 3–5.4D has as its subject "Workers' Compensation." The first three subparagraphs deal with the length of time employees, who are receiving compensation benefits, will be carried in leave without pay status (six months), during which time they will not earn personal and sick leave time, will be carried on the company's group health and life insurance plan and will be reinstated within the six month period if "certified by a physician to be fully able to perform their duties." Subparagraph 4 then provides as follows:

If the workers' compensation period extends *beyond* six months, the employee will be terminated and dropped from the payroll. The employee will no longer be carried on the company's group insurance plan; however, the employee may apply for conversion. Preferential treatment will be given when, with a physician's approval, the employee is able to return to work, but the employee will not be guaranteed reinstatement.

The termination letter dated January 3, 1990 from CCA to Trevino made it clear that she was being terminated in accordance with the corporate policy:

Dear Ms. Trevino,

In accordance with Corporate Policy Corrections Corporation of America must terminate your employement [sic] with the Reeves County Law Enforcement Center effective January 1, 1990.

Policy states that a facility may hold a position open for period of six months while an employee is on Workman's Comp. The six monthe [sic] period has

---

**1.** "The Legislature's purpose in enacting article 8307c was to protect persons who are entitled to benefits under the Worker's Compensation Law and to prevent them from being discharged by reason of taking steps to collect such benefits." *Carnation Company v. Borner,* 610 S.W.2d 450, 453 (Tex.1980).

now lapsed and it is necessary to fill the position in order to maintain and [sic] orderly, safe and secure facility.

·     ·     ·     ·     ·

This letter clearly establishes the causal link between Trevino's compensation claim and her termination. The policy and the letter are directed not toward all employees but only toward those employees who have been on workers' compensation for a period in excess of six months. The fact that the policy applies to all employees with compensation claims of longer than six months duration does not make it any the less discriminatory. It penalizes the employee who has a serious injury and files a claim by telling him that if he draws compensation for longer than six months, he is out of a job. It is not the six month period that makes the policy bad (it could be for a much shorter period and pass muster). It is bad because the termination is tied directly to maintaining a compensation claim for longer than six months (or whatever the period), contrary to the provisions of Article 8307c.

The cases cited by CCA in support of its position are inapposite. In *Harris v. American Red Cross*, 752 F.Supp. 737, 740 (W.D.Tex.1990), the employee was medically able to return to work but refused to do so. She had neither received nor applied for benefits prior to her discharge. In *Pope v. MCI Telecommunications Corporation*, 937 F.2d 258, 264–65 (5th Cir.1991), the employee claiming a discriminatory discharge under Article 8307c had initiated her compensation claim nearly two months after she was terminated for other reasons. That Court held that the employee must show by something more than subjective belief that the filing of the claim was a determining factor in the discharge.

Although CCA may have had legitimate staffing and safety concerns requiring the termination of employees who were absent from work for longer than six months, such concerns are not sufficient to disprove the clear causal link between the compensation claim and the termination. We hold that CCA's policy on its face, and as well as its implementation by the termination let-

ter, violated the provisions of Article 8307c. Trevino's point of error is sustained.

The order and judgment of the trial court is reversed and the cause remanded for trial on the merits.