Kenneth C. FENLEY, Sr., Appellant,

v.

**MRS. BAIRD'S BAKERIES, INC., Appellee.**

No. 06–00–00139–CV.

Court of Appeals of Texas, Texarkana.

Submitted April 2, 2001.

Decided Oct. 2, 2001.

**51.** *Jackson v. State,* 877 S.W.2d 768, 771 (Tex. Crim.App.1994).

Peter Costea, Houston, for appellant.

Clay D. Humphries, Kevin C. Norton, Cantey & Hanger, LLP, Fort Worth, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

GRANT, Justice.

Kenneth C. Fenley, Sr. appeals the trial court's granting of Mrs. Baird's Bakeries, Inc.'s Motion for Summary Judgment in a suit brought under TEX. LAB. CODE ANN. § 451.001(1) (Vernon 1996), alleging he was discharged from employment because he had filed a workers' compensation claim in good faith.

The trial court did not specify the grounds on which it granted summary judgment. Fenley raises one issue on appeal, that the trial court erred in granting Mrs. Baird's Motion for Summary Judgment. He will, therefore, be permitted to argue as to all possible grounds upon which summary judgment should have been denied. *See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex.1970).

Fenley's petition alleges that he was discharged and discriminated against because he filed a good-faith workers' compensation claim. He also contends that the alleged policy of Mrs. Baird's under which

he was fired had a "disparate impact" on him, which he contends is also sufficient to establish a discriminatory motive, in violation of Section 451.001(1).

The summary judgment proof shows the following:

Fenley was continuously employed at the bakery plant in Houston from August 1984 until July 1997. He was initially employed as a helper, loading pans and loading the ovens. His last job before termination was that of a machine operator, which required that he take pans from a cart, put them on a machine, set up the machine, and run the pans through it. Fenley suffered at least six on-the-job injuries during his period of employment. Some of these injuries required that he miss substantial amounts of work. He filed workers' compensation claims for all of them. In each of these prior instances, he was permitted to return to work and was not terminated as a result. The present litigation involved an elbow injury, which occurred in August 1996 when he fell off of a ladder next to his machine. On October 28, 1996, Mrs. Baird's pointed out to Fenley the history of his prior on-the-job injuries and told him:

> Kenneth, it is your responsibility to perform your duties in a safe manner and avoid having accidents. It is also your responsibility to be available for fulltime [sic] unrestricted work and not miss work, especially for extended periods of time.

> In the future, further acts of carelessness or your unavailability for fulltime [sic] unrestricted work, action up to and including termination may be taken against you.

In June 1997, Mrs. Baird's, in a memorandum, reminded Fenley that he had missed a considerable amount of work since his last injury. He was asked to provide it with an estimated date as to when he would return to work and whether he anticipated having restrictions on his ability to perform his job. He was given thirty days to either return to work or make satisfactory arrangements, and for his doctor to provide a definite time when Fenley could return to work. Mrs. Baird's terminated Fenley by letter dated July 28, 1997, stating that the termination was effective July 27, 1997, because neither he nor his doctor could supply the company with a date on which Fenley would return to work.

In the affidavit of Jerry Land, human relations manager for Mrs. Baird's Houston plant, submitted by Mrs. Baird's in support of its Motion for Summary Judgment, he states that Fenley was not terminated because he filed workers' compensation claims, but pursuant to its policy limiting the time employees could take leaves of absence to six months. In support of its position that limitations on unexcused absences were part of ongoing company policy, Mrs. Baird's, as summary judgment evidence, submitted copies of letters sent to five different employees terminating them for excessive absences. Four of the five letters were sent to employees who, Land asserts in his affidavit, were not workers' compensation claimants. In his written responses to Mrs. Baird's written interrogatories, Fenley stated that he was finally cleared by his doctor to return to unrestricted work on January 14, 1998. In Fenley's deposition, submitted as summary judgment evidence, he was unable to supply specific facts to support his contention that he was discharged for filing workers' compensation claims. Fenley also stated that he was not aware of the existence of this "policy" at Mrs. Baird's.

### Standard of Review–Summary Judgment

 The standard of review of the trial court's granting of a motion for sum-

mary judgment is 1) the movant must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; 2) in deciding whether there is a disputed material fact issue precluding summary judgment, the court must take evidence favorable to the nonmovant as true; and 3) the court must indulge every inference in favor of the nonmovant and resolve any doubts in the nonmovant's favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Castellow v. Swiftex Mfg. Corp.*, 33 S.W.3d 890, 894 (Tex.App.-Austin 2000, no pet.); *see* TEX. R. CIV. P. 166a(c). When a defendant is the movant for summary judgment, it has the burden to conclusively negate at least one essential element of the plaintiff's cause of action, or conclusively establish each element of an affirmative defense. *Kiser v. Original, Inc.*, 32 S.W.3d 449, 451 (Tex.App.-Houston [14th Dist.] 2000, no pet.); *Smith v. SCI Mgmt. Corp.*, 29 S.W.3d 264, 266 (Tex. App.-Houston [14th Dist.] 2000, no pet.). Once the defendant produces evidence that entitles it to a summary judgment, the plaintiff must produce evidence that raises a fact issue. Conclusory statements do not constitute such evidence. *Butler v. Cont'l Airlines, Inc.*, 31 S.W.3d 642, 653 (Tex.App.-Houston [1st Dist.] 2000, no pet.).

### Texas Law Prohibiting Retaliatory Discharge/Discrimination

TEX. LAB. CODE ANN. § 451.001 (Vernon 1996) provides:

A person may not discharge or in any other manner discriminate against an employee because the employee has:

(1) *filed a workers' compensation claim in good faith;*

(2) hired a lawyer to represent the employee in a claim;

(3) instituted or caused to be instituted in good faith a proceeding under Subtitle A; or

(4) testified or is about to testify in a proceeding under Subtitle A.

(Emphasis added.)

■ This section is a statutory exception to the Texas common-law doctrine of employment at will. *Burfield v. Brown, Moore & Flint, Inc.*, 51 F.3d 583, 589 (5th Cir.1995). Unless one of the four specific circumstances enumerated was the motivating factor in discharging or discriminating against the employee, that employee cannot prevail on a claim based on this article. *Terry v. S. Floral Co.*, 927 S.W.2d 254, 257 (Tex.App.-Houston [1st Dist.] 1996, no writ). In pursuing a claim under Section 451.001, the plaintiff has the burden of establishing a causal connection between the filing of a workers' compensation claim and his or her discharge or other adverse action taken by his or her employer. *Piper v. Kimberly–Clark Corp.*, 970 F.Supp. 566, 574 (E.D.Tex. 1997). The employee may show causation by direct or circumstantial evidence and by the reasonable inferences which may be drawn from such evidence. *Burfield*, 51 F.3d at 590. Once the causal link is established, the employer may rebut the plaintiff's showing by demonstrating that the discharge was actually for a reason not related to the plaintiff's pursuit of workers' compensation benefits. *Piper*, 970 F.Supp. at 574.

■ In order to survive an employer's motion for summary judgment in such a case, the burden then shifts back to the employee to produce controverting evidence of a retaliatory motive. *Terry*, 927 S.W.2d at 257.

■ Fenley correctly argues that the employer's state of mind is one of the controlling elements in an employment dis-

crimination suit, an element difficult of direct proof. *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). When state of mind is such an essential element, it is often not well-suited for disposition by summary judgment because a party's state of mind is inherently a question of fact which turns on credibility, a matter within the province of the fact finder, i.e., the jury. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1265 (5th Cir. 1991); *see also Hunt v. Cromartie*, 526 U.S. 541, 543, 119 S.Ct. 1545, 1547, 143 L.Ed.2d 731, 742 (1999). However, summary judgment may be appropriate even in instances where such elusive concepts as motive or intent are at issue, if the non-moving party rests merely on conclusory allegations, improbable inferences and unsupported speculation. *Int'l Shortstop, Inc.*, 939 F.2d at 1266.

 Case law supports Mrs. Baird's argument that an employee's discharge resulting from an employer's uniform application of a reasonable absence-control policy does not constitute a retaliatory discharge. In *Texas Div.-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312 (Tex. 1994), in response to an employee's action under Section 451.001(1), defendant-employer's summary judgment evidence included affidavits of supervisory and administrative personnel to the effect that plaintiff-employee's termination was prompted by application of a "three-day rule," i.e., mandatory termination of an employee who, without special circumstances, was absent three consecutive days without receiving permission or giving notice. *Id.* at 313. The affidavits in *Carrozza* were determined by the court to be "clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, as required by Tex. R. Civ. P. 166a(c)," and, absent contradictory evidence from the employee, were sufficient to support a summary judgment in favor of the employer. *Id.* at 313–14. If an employee's termination is required by uniform enforcement of a reasonable absentee policy, then it cannot be asserted that the employee's termination would not have occurred when it did but for the employee's assertion of a workers' compensation claim or other conduct protected by Section 451.001. If the employer produced evidence that such a rule is uniformly enforced, then no violation of the anti-retaliation statute is shown. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 451 (Tex. 1996); *see also Terry*, 927 S.W.2d 254.

 Fenley contends that there is direct evidence of discrimination by Mrs. Baird's because he was told by Jerry Land, after his last on-the-job injury, that if he were injured again, he would be fired. Land's written memorandum to Fenley, dated June 27, 1997, after pointing out Fenley's history of on-the-job accidents and lost work time, requested that he tell them when he will be available for work on a full-time basis without restrictions. Land's interoffice memorandum to Fenley, dated October 28, 1996, after his last accident, does not contain language that could be interpreted as a threat to terminate Fenley for filing a workers' compensation claim. The memorandum instead sets out the company's policy on leaves of absence. This does not constitute evidence of discrimination. *See Cont'l Coffee Prods. Co.*, 937 S.W.2d at 451.

 Fenley argues that in reality Mrs. Baird's has no "policy." In support of this assertion, he points out that the company was unable to produce any written documentation that such a policy in fact exists. Fenley testified by deposition that he was unaware of any six-month leave of absence policy at Mrs. Baird's. He further points out that there are different wordings of

the so-called policy, particularly as to whether it is applicable only to employees who have been injured, or whether it also applies to employees who have been absent for other reasons.

Letters sent to other employees by Mrs. Baird's, predating Fenley's letter, contain language similar to that used in his letter and indicate the prior existence of a company policy placing time limits on leaves of absence. Further, in his affidavit submitted in support of summary judgment, Land testified as to the existence of such a policy.[1] In *Texas Div.-Tranter, Inc.*, the Supreme Court found sufficient summary judgment evidence, consisting of affidavits of supervisory and administrative personnel, that the employee's termination was not because he filed a workers' compensation claim, but was rather due to the company's "three-day rule," referred to by the Court as a "reasonable absence-control policy." *Texas Div.-Tranter, Inc.*, 876 S.W.2d at 313. In *Terry*, the Houston First Court of Appeals concluded that *Carrozza* did not require that there be a written absence-control policy in order to show a nondiscriminatory intent on the part of the employer. *Terry*, 927 S.W.2d at 258. In both *Carrozza* and *Terry*, the courts held that such evidence was sufficient in a motion for summary judgment to establish a valid nondiscriminatory motive for the firing of the employee, requiring controverting evidence by the employee, which in neither case was forthcoming.

Likewise, in the present case, Mrs. Baird's summary judgment evidence is sufficient to establish the existence of a neutrally-applied policy regarding leaves of absence, particularly where there is no summary judgment evidence to the contrary. Fenley's conclusory allegations do not establish a genuine issue of material fact precluding summary judgment.

Fenley contends that because the so-called "reasonable absence-control policy" defense is not incorporated into Tex. Lab. Code Ann. § 451.001 itself, the company cannot defend a claim under the statute on that basis.

The burden of proving discrimination under the statute lies ultimately with the employee to establish that his discharge or other adverse discriminatory action occurred because he or she filed a workers' compensation claim in good faith. The previously-cited cases hold that an employee cannot prevail on such a claim if the employer can establish that the reason for the employee's discharge or other adverse treatment was not due to his or her filing of a workers' compensation claim, but rather due to a neutrally-applied absence-control policy and that a discharge under such a policy is not a discharge because of the filing of a workers' compensation claim.

Citing *Trevino v. Corrections Corp. of Am.*, 850 S.W.2d 806 (Tex.App.-El Paso 1993, writ denied), Fenley asserts that even assuming such a policy exists, the policy itself violates Section 451.001. The court in *Trevino* holds that in order to prevail on a claim under what is now Section 451.001(1), an employee must establish a causal link between his or her termination and his or her filing of a workers' compensation claim. *Id.* at 808. The El Paso Court of Appeals found such link in the specific written policy of the company, which provided, "If the workers' compensation period extends beyond six months, the employee will be terminated and dropped from the payroll." *Id.* Despite

---

1. Land's statement in his affidavit that the policy is "neutrally applied" is a legal conclusion rather than a statement of fact.

evidence of other reasons for Trevino's termination from employment, the evidence was clear that his discharge was directly related to his filing of a workers' compensation claim. *Id.* at 809.

■ The distinctions between the facts of the present case and the facts in *Trevino* are significant. Summary judgment proof, either in the form of a specific company policy tying continued employment to workers' compensation status, or any other form of evidence that Fenley may have offered, does not establish that his termination was related to his workers' compensation filing. The summary judgment proof shows that before his 1996 injury and workers' compensation claim, he had filed a number of previous claims, and he admitted that the company had assisted him in this regard.

There is no basis for us to hold that the company policy is in violation of the statute.

Fenley attempts to distinguish both *Carrozza* and *Terry,* and points out the factual distinctions between those cases and his case. He does not, however, show how or why the factual distinctions are significant, i.e., why those distinctions would compel a different result in this case.

Mrs. Baird's summary judgment evidence established the existence of a reasonable absence-control policy and established that Fenley's termination was carried out pursuant to that policy. Fenley produced no summary judgment evidence to the contrary.

■ Fenley argues further that Mrs. Baird's summary judgment evidence shows that the company, through its representative, lied to him regarding his prospects for being rehired. In his letter of termination, Jerry Land told Fenley:

> If you would ever like to return to work at Mrs. Baird's, you must request an application for employment and provide a medical release from your doctor stating that you are able to perform the job for which you are applying. While we cannot guarantee that you will be rehired when you apply, we will welcome your application for re-employment and will give consideration to your qualifications for any available openings.

Compare this statement with Fenley's personnel records in which, in the boxes provided for such designation, the "no" box is marked for "Recommend for Rehire?"

Fenley contends, citing a recent United States Supreme Court decision, that false statements by an employer are indicative of its attempt to cover up an actual discriminatory purpose:

> In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt."

*Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147, 120 S.Ct. 2097, 2108, 147 L.Ed.2d 105, 120 (2000).

The termination letter states that Fenley is welcome to reapply *provided* he has medical clearance to do his job on a regular basis without restrictions. His termination was on the stated basis of "unavailability for work schedule." His unavailability was due to his continued state of injury and inability to perform required job duties.

The letter does not say that Fenley will be rehired or that he would be recommended for rehiring. It specifically states that the company will not guarantee that he will be rehired, but that the company

will consider his qualifications and welcome his application. The letter does not indicate that in considering his qualifications, the company will not consider his job safety record. The letter is not inconsistent with the personnel record that he would not be recommended for rehire. The general language in the letter simply tells him how he can seek re-employment, but does not guarantee it.

Fenley argues that Land's knowledge of Fenley's on-the-job injury and workers' compensation status allows an inference of unlawful discrimination and retaliation as a matter of law.

In response to Mrs. Baird's motion and summary judgment evidence, Fenley must offer summary judgment proof raising the issue that there is a causal link between his termination and his previous filing of a workers' compensation claim.

■ This may be shown by circumstantial evidence and reasonable inferences arising therefrom. One type of circumstantial evidence recognized as supporting a finding of unlawful discrimination is the employer's knowledge of the workers' compensation claim by those who made the decision to terminate employment. *Am. W. Airlines v. Tope*, 935 S.W.2d 908, 912–13 (Tex.App.-El Paso 1996, no writ). Fenley also cites *Stephens v. Delhi Gas Pipeline Corp.*, 924 S.W.2d 765 (Tex.App.-Texarkana 1996, writ denied). In *Stephens*, the issue was whether company management, at the time the employee was terminated, was aware of the employee's prior on-the-job injury. In support of the employer's motion for summary judgment, two members of management, in affidavits, stated that the employee was fired because he violated company policy. In addition, both stated in their affidavits that the employee had not informed them of any job-related health or injury problems. The employee stated in his affidavit that he did

make a member of management aware of his health problems, which were due to exposure to hydrogen sulfide gas. We held in that case that because the employee raised a fact question as to whether his discharge was due to a potential filing of a workers' compensation claim, summary judgment was not appropriate. *Id.* at 772.

This present case is significantly different from *Stephens*. The employer's defense in this suit, and the major issue in this case is that although it is conceded that the employer knew Fenley had filed a compensation claim, the termination was undertaken pursuant to a policy designed for the reduction of absenteeism in the workers, without regard to whether a workers' compensation claim had been filed. In the present case, Fenley has not raised genuine issues of material fact: 1) that Mrs. Baird's has in effect a six-month leave of absence policy and 2) that his employment was terminated pursuant to that policy.

Another type of circumstantial evidence which may support a finding of a discriminatory motive on the part of the employer is the display by the employer of a "negative attitude" toward the employee's injuries and the filing of a claim. *Paragon Hotel Corp. v. Ramirez*, 783 S.W.2d 654, 658 (Tex.App.-El Paso 1989, writ denied). Fenley argues that such a negative attitude is demonstrated in the October 28, 1996, memorandum which he received from management regarding his repeated on-the-job injuries and resultant lost work.

■ However, a reading of this memorandum indicates that Mrs. Baird's is doing no more than expressing concern regarding Fenley's significant number of on-the-job injuries, resulting in significant lost work. The memorandum does not indicate an attempt to discourage the filing of workers' compensation claims. It was un-

like *Paragon,* where the company had developed a type of game designed, through management and peer pressure, to discourage the filing of workers' compensation claims and reporting injuries. *Id.* at 658–59. Further, in *Paragon,* the evidence showed that the employer did not follow its own policies and procedures in discharging the employee. *Id.* at 659. The summary judgment evidence shows that Fenley had filed other claims and that the company had assisted him in filing the claims. It does not show a failure by the company to follow its own normal procedure in termination. Fenley was given one month's notice to provide management with information as to when he would be able to return to work. Fenley's argument, that under Mrs. Baird's policy, he should have been terminated sooner, does not go to show that the company discriminated against him for filing workers' compensation claims.

Fenley contends that his summary judgment evidence not only establishes the existence of a genuine issue of material fact precluding summary judgment, but establishes a violation of the statute "as a matter of law." He argues that his "protected status" under Section 451.001(1) is legally established when the adverse, on-the-job medical condition occurs, and when an employee is terminated due to his or her inability to report to work because of this medical condition, the termination is, as a matter of law, because of the employee's protected status.

This argument ignores the recent cases cited above regarding permissible company policy, which may permit the discharge of an employee. However, the older cases cited by Fenley do not support his argument. He cites *Hunt v. Van Der Horst Corp.,* 711 S.W.2d 77 (Tex.App.-Dallas 1986, no writ), an appeal from a summary judgment granted to an employer on an

employee's suit brought under what is now Section 451.001(1). The summary judgment evidence showed that the company's decision to terminate the employee was made on February 6, that a written termination notice was prepared on the morning of February 12, that the employee was injured on February 12 at approximately 2:00 p.m., and was notified of his termination after he went home that afternoon. The court of appeals reversed the trial court's granting of summary judgment, holding that a material issue of fact had been raised by the employee's statement that he had informed his employer of his injuries before his termination. The employer contended that the employee was fired before it was made aware of his injury. As stated by the court:

In the instant case, Hunt deposed that, before he was told that he was fired, he informed his supervisor that he had suffered an injury on the job and that he was going home and to see a doctor. We conclude that, in light of the purpose of article 8307(c) [now Section 451.001(1) ], Hunt had at this point "instituted a proceeding" under the Act.

*Id.* at 80. In *Texas Steel Co. v. Douglas,* 533 S.W.2d 111 (Tex.Civ.App.-Fort Worth 1976, writ ref'd n.r.e.), the issue was whether a compensation claim had been filed by the employee before his termination. The court of appeals held that the jury could properly find that the employee commenced his workers' compensation claim before his termination because he had reported the injury to his employer and received some benefits before the termination, even though there was no evidence that the employee had filed a formal claim for compensation with the Industrial Accident Board. *Id.* at 114–16. In *Mid–South Bottling Co. v. Cigainero,* 799 S.W.2d 385 (Tex.App.-Texarkana 1990, writ denied), an appeal from a judgment based on a jury verdict, the issue was,

again, the timing of the employee's firing versus the filing of the compensation claim. The evidence showed the injury had occurred June 30 and the employee was terminated July 7. There was a factual dispute and conflicting testimony, but this court found that there was sufficient evidence to support the jury's finding that the employee had been terminated, at least in part, because he had filed a workers' compensation claim. *Id.* at 389–90.

In the present case, unlike the cited cases, there is no question that Mrs. Baird's was aware that Fenley had filed a claim. The issue was whether there was a genuine issue of fact of a causal link between the filing of the workers' compensation claim and the termination, in light of the employer's summary judgment evidence of its "absence-reduction" policy.

While the cited cases may establish as a matter of law the time at which a workers' compensation claim is considered "filed," they do not establish as a matter of law the required causal link between the filing and the employee's termination.

Without citation to authority, Fenley next argues that the written notice and/or termination letter created a "return to work" contract between the company and him, conditioning his continued employment on his ability to return to work, and that such a contract is unlawful because it takes away his entitlement to legal protection under the workers' compensation laws. This letter constituted a notice, not a contract.

### Disparate Impact

As an additional issue on appeal, Fenley advances the theory that the policy regarding leaves of absence, while neutral on its face, has a *disparate impact* on individuals filing workers' compensation claims, thus establishing a case of discrimination.

Fenley cites cases decided under Title VII of the Federal Civil Rights Act and notes that employment discrimination claims under that statute may be established under two different theories: 1) disparate treatment, wherein the employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin; proof of discriminatory motive is required; and 2) disparate impact, which involves employment practices that are facially neutral in their treatment of different groups but which, in fact, fall more harshly on one group than another and cannot be justified by business necessity; proof of discriminatory motive is not required. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396, 415 n. 15 (1977); *see also Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 645, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252 n. 5, 101 S.Ct. 1089, 1093 n. 5, 67 L.Ed.2d 207, 215 n. 5 (1981). An example of a disparate impact case is *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), in which African–American employees of a power company brought suit under the Civil Rights Act of 1964 claiming that the employer violated the anti-discrimination in employment provisions of the Act by requiring a high school diploma and a satisfactory intelligence test score for certain jobs formerly limited to white employees. On the record before it, the Texas Supreme Court found that neither the high school completion requirement nor the general intelligence test was shown to bear a demonstrable relationship to successful performance in the jobs for which it was required. *Id.*, 401 U.S. at 431, 91 S.Ct. 849. There was no showing of actual discriminatory intent on the part of the employer. Despite the lack of such intent,

however, the Court found that the Civil Rights Act prohibited "employment procedures or testing mechanisms that operate as 'built-in headwinds' for minority groups and are unrelated to measuring job capability." *Id.* at 432, 91 S.Ct. 849.

Fenley's argument is that while on its face the six-month leave of absence policy is facially neutral regarding those individuals who file workers' compensation claims, its impact falls most heavily on those who have been injured on the job and who, in most instances, have filed workers' compensation claims. Nevertheless, according to affidavits, four of the five letters submitted in support of Mrs. Baird's Motion for Summary Judgment, showing its prior enforcement of its six-month leave of absence policy, were sent to workers who were not drawing workers' compensation. Further, as part of Fenley's summary judgment evidence, he filed Mrs. Baird's responses to interrogatories supplying the names of employees terminated under its policy. Fifteen names were supplied: eleven of these were individuals who were receiving workers' compensation; the other four pertained to unspecified "illness."

Generally, as to whether disparate impact has been applied to discrimination cases under statutory provisions other than Federal Title VII, the cases are split. For example, the federal courts are split as to whether a disparate impact case can be made under the Federal Age Discrimination in Employment Act. *See, e.g., Ellis v. United Airlines,* 73 F.3d 999, 1006–10 (10th Cir.1996). See discussion and cases cited in *Camacho v. Sears Roebuck de Puerto Rico,* 939 F.Supp. 113, 118–22 (D.P.R.1996).

▮ The Legislature's purpose for enacting Section 451.001 was to protect people who are entitled to benefits under the workers' compensation laws and to prevent employers from firing them for taking steps to collect benefits. To prevail on such a claim, a causal link between the termination and the filing of a workers' compensation claim must be shown, but it need not be the sole cause. *Housing Auth. of City of El Paso v. Guerra,* 963 S.W.2d 946, 950 (Tex.App.-El Paso 1998, pet. denied). In a situation where the discharge policy was drawn in such a manner only to apply to employees filing workers' compensation claims, or if it could be shown that the policy was enforced only against employees filing workers' compensation claims, this would be a logical inference that there was not a neutral application of a company policy. This would indicate an unlawful discharge from employment in a suit brought under Section 451.001(1) of the Texas Labor Code. Such a policy or practice was not shown in the present case.

The judgment of the trial court is affirmed.