In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00024-CR


______________________________




CHARLES TERRELL MCCLURE, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 6th Judicial District Court


Lamar County, Texas


Trial Court No. 22195




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Carter



O P I N I O N



 Charles Terrell McClure pleaded guilty to constructive delivery of methamphetamine
weighing more than four grams but less than 200 grams, a first degree felony. See Tex. Health &
Safety Code Ann. § 481.102(6) (Vernon Supp. 2008) (methamphetamine is penalty group 1
controlled substance), § 481.112(a), (c) (Vernon 2003) (criminalizing delivery of penalty group 1
controlled substance and assigning punishment range provided for first degree felonies). A jury
assessed his punishment at twenty years' imprisonment and a fine of $1,000.00. McClure now
appeals, raising two challenges to the trial court's decision to admit extraneous offense evidence at
this punishment trial. We overrule both issues and affirm the trial court's judgment.

I. Did Sufficient Evidence Support Admission of the Extraneous Offenses?

 In his first point of error, McClure contends the trial court erred by admitting extraneous
misconduct evidence during the punishment phase of the trial when this extraneous offense evidence
was unsupported by sufficient evidence such that a rational trier of fact could find beyond a
reasonable doubt that McClure engaged in the alleged extraneous misconduct. 

 A. Standard of Review

 A court may admit any evidence relevant to the issue of punishment during that phase of a
trial:

 including but not limited to the prior criminal record of the defendant, his general
reputation, his character, an opinion regarding his character, the circumstances of the
offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas
Rules of Evidence, any other evidence of an extraneous crime or bad act that is
shown beyond a reasonable doubt by evidence to have been committed by the
defendant or for which he could be held criminally responsible, regardless of whether
he has previously been charged with or finally convicted of the crime or act.


Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2008). Thus, "[u]nless the
extraneous misconduct evidence is such that the sentencing entity (either judge or jury) can rationally
find the defendant criminally responsible for the extraneous misconduct, the trial court is not
permitted to admit it at a punishment hearing." Smith v. State, 227 S.W.3d 753, 759-60 & n.16
(Tex. Crim. App. 2007) (citing Mitchell v. State, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996)
(plurality opinion)). Ultimately, a trial court's decision to admit or exclude evidence of an
extraneous offense will not be disturbed absent a showing that the trial court abused its discretion. 
Mitchell, 931 S.W.2d at 953.

 B. Evidence at Issue

 Before calling any witnesses, counsel from both sides had a short bench conference in which
the State made an offer of proof. The prosecutor explained to the trial court that the police
interviewed McClure post-arrest. During the interview, McClure admitted to selling
methamphetamine in quarter-gram amounts on twenty to twenty-five different occasions during the
nine-month period immediately preceding his arrest. McClure contended the expected evidence
would be insufficient to show McClure engaged in this conduct beyond a reasonable doubt. The trial
court overruled the objection and permitted the State's witness to discuss that evidence.

 Leigh Foreman, a police officer for the City of Paris, testified that, during a post-arrest search
of McClure's vehicle, police found evidence suggesting McClure was a "very large-scale [drug]
trafficker." Foreman testified that police found an electronic scale, several spoons, and hundreds of
small-sized plastic bags commonly used by narcotics traffickers--some of which still contained
illegal drugs and were marked with prices that Foreman testified were consistent with the street
values of those drugs.

 Once Foreman had provided the jury with the background surrounding McClure's arrest, he
then proceeded to provide details about a custodial interrogation he conducted of McClure. It was
during this interrogation that McClure admitted he had been selling drugs during the previous nine-month period. (1) Shortly after his brother's death the previous year, McClure found a three- or four-pound cache of methamphetamine in his brother's house. McClure then decided he would sell the
drugs so he could save money to buy a house. (2) Foreman then said McClure had admitted completing
approximately twenty to twenty-five narcotics sales during the period from Christmas 2006 through
March 15, 2007. McClure reportedly further admitted that the majority of these sales were for
quarter-gram to half-gram amounts. And McClure also reportedly admitted to having sold drugs to
two City of Paris employees on the morning before the police arrested him for the charges that were
then on trial. 

 With this background in mind, we turn to the merits of McClure's first issue.

 C. Distinguishing Thomas and Bulington

 McClure cites Thomas v. State, 807 S.W.2d 803 (Tex. App.--Houston [1st Dist.] 1991, pet.
ref'd), and Bulington v. State, 179 S.W.3d 223 (Tex. App.--Texarkana 2005, no pet.), for the
proposition that the State's failure to provide evidence to corroborate a confession renders that
confession insufficient to establish commission of the crime. In Thomas, the appellant was
convicted of aggravated robbery; on appeal he argued, inter alia, that the evidence was insufficient
to support that conviction because the State failed to present any evidence corroborating his
extrajudicial confessions. 807 S.W.2d 803, 804-07. In Bulington, the appellant was convicted of
capital murder and sentenced to life; on appeal, he argued the evidence was legally insufficient to
corroborate the testimony of an accomplice witness. Both Thomas and Bulington addressed whether
there was sufficient evidence brought forth during guilt/innocence to corroborate the accused's
confession to the charges for which he was then on trial. Neither Thomas nor Bulington addressed
whether extraneous offense evidence was sufficiently corroborated during the punishment phase of
the trial. Accordingly, Thomas and Bulington provide no guidance for the issue now being raised
by McClure.

 D. The Trial Court Did Not Err

 Article 37.07 of the Texas Code of Criminal Procedure is not a sufficiency of the evidence
rule; instead, that provision governs what kind of evidence may be introduced at law. York v. State,
258 S.W.3d 712 (Tex. App.--Waco 2008, pet. filed). Nor does Article 37.07 appear to expressly
require corroboration of confessions during the punishment phase of trial. Compare Tex. Code
Crim. Proc. Ann. art. 37.07 with Tex. Code Crim. Proc. Ann. art. 1.15 (Vernon 2005) (requiring
State to corroborate guilty plea by bringing forth sufficient evidence to substantiate guilt).

 We have not been directed by the parties to any appellate cases that have addressed whether
Article 37.07 of the Texas Code of Criminal Procedure requires corroboration of extrajudicial
confessions admitted during the punishment phase of a trial. Nevertheless, our independent research
has found two such Texas decisions. In Malpica v. State, 108 S.W.3d 374 (Tex. App.--Tyler 2003,
no pet.), the appellant challenged the sufficiency of the extraneous offense evidence admitted during
punishment. The court of appeals overruled his contention and expressly held that "[a]n extra-judicial confession of the extraneous offense need not be corroborated." Id. at 378. The First Court
had previously reached the same conclusion in Padron v. State, 988 S.W.2d 344, 346 (Tex.
App.--Houston [1st Dist.] 1999, no pet.). The Padron court noted "there is no authority regarding
the need for corroboration of extrajudicial admissions to extraneous offenses." Id.

 In a somewhat similar case, the Texas Court of Criminal Appeals has held that the rule
requiring corroboration of accomplice witness testimony about extraneous offenses does not apply
during the punishment phase of a capital murder trial. In Bible v. State, the court held "the corpus
delicti doctrine does not apply to extraneous offenses offered at the punishment phase of a capital
murder trial." Bible v. State, 162 S.W.3d 234, 247 (Tex. Crim. App. 2005). Bible thus stands for
the proposition that the State need not provide evidence to corroborate an accomplice's testimony
about an extraneous offense committed by the accused when such evidence is brought forth during
the punishment phase of a capital murder trial. Id. In deciding Bible, this state's highest criminal
court reasoned that, at the point when a capital jury is considering the accused's punishment, the jury
is "not faced with the specter of a totally innocent defendant being convicted for a crime that never
occurred solely on the basis of a confession resulting from official coercion or the defendant's own
delusions." Id.

 While Bible concerned extraneous offense evidence admitted during the punishment phase
of a capital murder trial, we see no reason to judicially impose a higher burden of corroboration in
noncapital cases (such as this case) than that burden which the Texas Court of Criminal Appeals
expressly refused to extend to capital cases. Instead, we agree with our sister courts' conclusions in
Malpica and Padron, and we hold that extrajudicial confessions of extraneous offenses need not be
corroborated at the punishment phase of a jury trial; instead, the only limitation is whether the jury
independently believes such confessions prove the alleged extraneous offenses beyond a reasonable
doubt.

 In this case, McClure's custodial confession to Foreman about dealing drugs would, if
believed by the jury, be sufficient to support the conclusion that (beyond a reasonable doubt)
McClure had engaged in such conduct. Cf. Torres v. State, 92 S.W.3d 911, 916-17 (Tex.
App.--Houston [14th Dist.] 2002, pet. ref'd) (jury free to rely on circumstantial evidence contained
in extrajudicial confession that Torres committed murder; evidence insufficient for conviction). The
prosecutor's initial proffer during the bench conference informed the trial court that the expected
testimony would show McClure admitted to selling methamphetamine in quarter-gram amounts
during twenty to twenty-five different transactions over a nine-month period. This summary of the
expected testimony provided the trial court with enough information to conclude the expected
evidence alone would (if believed by the jury beyond a reasonable doubt) support the conclusion that
McClure had committed these other crimes. (3) Article 37.07 did not require the State to provide, nor
did Article 37.07 require the trial court to first hear, additional corroborating evidence before the
extrajudicial confession to these extraneous offenses could be admitted during the punishment phase
of the trial. No error has been shown.

II. Probative Value Versus Prejudicial Impact

 In his second point of error, McClure contends the probative value of the extrinsic offense
was substantially outweighed by its potential for prejudice. The record shows McClure preserved
this issue by first raising this objection during trial. 

 Trial courts are afforded a wide range of discretion within which to admit or exclude
evidence. Wilder v. State, 111 S.W.3d 249, 255 (Tex. App.--Texarkana 2003, pet. ref'd). As a
reviewing court, we will not reverse a trial court's decision to admit or exclude evidence absent a
showing that the lower court abused that discretion. If the trial court's decision falls within the zone
of reasonable disagreement, that decision will not be disturbed. Green v. State, 934 S.W.2d 92, 102
(Tex. Crim. App. 1996); Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op.
on reh'g). 

 The Texas Rules of Evidence favor the admission of all relevant evidence at trial. Tex. R.
Evid. 402. "Relevant evidence" is "evidence having any tendency to make the existence of any fact
that is of consequence to the determination of the action more or less probable than it would be
without the evidence." Tex. R. Evid. 401. However, even relevant evidence may be excluded if the
probative value of that otherwise relevant evidence is "substantially outweighed by the danger of
unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay,
or needless presentation of cumulative evidence." Tex. R. Evid. 403. "'[U]nfair prejudice' refers
to 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily,
an emotional one." Erazo v. State, 144 S.W.3d 487, 501-02 (Tex. Crim. App. 2004) (quoting
Rogers v. State, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999)); accord Cohn v. State, 849 S.W.2d
817, 820 (Tex. Crim. App. 1993).

 The Texas Court of Criminal Appeals has offered the following explanation of the meaning
of Article 37.07 of the Texas Code of Criminal Procedure and its relevancy parameters with respect
to evidence admitted during a punishment trial:

 Article 37.07, § 3(a)(1) allows for admission of any evidence the trial court "deems
relevant to sentencing." The Legislature has expressly provided that "relevant"
punishment evidence includes, but is not limited to, both character evidence in the
form of opinion testimony as well as extraneous-offense evidence. Because there are
no discrete fact issues at the punishment phase of a non-capital trial, we have ruled
that the definition of "relevant," as stated in Rule 401 of the Texas Rules of
Evidence, does not readily apply to Article 37.07. What is "relevant" to the
punishment determination is simply that which will assist the fact finder in deciding
the appropriate sentence in a particular case. When the jury assesses punishment, it
must be able to tailor the sentence to the particular defendant, and relevance is simply
"a question of what is helpful to the jury in determining the appropriate sentence for
a particular defendant in a particular case." Importantly, we have held that when a
defendant applies for community supervision (as the appellant did), the trial court
may reasonably deem any character trait that pertains to the defendant's suitability for
community supervision to be a relevant matter for the sentencer to consider.


Sims v. State, No. PD-1575-07, 2008 Tex. Crim. App. LEXIS 820, at *8-9 (Tex. Crim. App. July 2,
2008) (footnotes omitted). (4)

 A person's history of violating the law is undoubtedly a relevant factor for a jury to consider
when assessing a sentence because it relates to the defendant's character. Fowler v. State, 126
S.W.3d 307, 310 (Tex. App.--Beaumont 2004, no pet.). Juries should also be able to consider a
person's criminal history. Lujan v. State, 626 S.W.2d 854, 864 (Tex. App.--San Antonio 1981, pet.
ref'd). When, as was the case here, the accused has filed an application for community supervision
in which he or she claims never to have been previously convicted of a felony offense, the issue of
whether or not that person has ever previously engaged in felony-level conduct is certainly relevant. 
Does such evidence serve to prejudice the accused? Certainly. Anything that paints the defendant
in a bad light is hurtful and prejudicial to his or her case. But is that prejudice "unfair" or does that
prejudice substantially outweigh the evidence's probative value? Under our law, the answer to that
question is clearly "No," with respect to extraneous offense evidence that the jury believes to have
been proven beyond a reasonable doubt, because such evidence has such an empirically high
probative value with regard to a jury's ability to assess a sentence appropriate for both the facts of
that particular case and for that particular defendant.

Conclusion

 The trial court did not err by admitting testimony during McClure's punishment trial that
McClure had confessed to committing extraneous offenses, even though such testimony was not
accompanied by corroborating evidence. Article 37.07 of the Texas Code of Criminal Procedure
requires no such corroboration. Additionally, the probative value of this extraneous offense evidence
was not substantially outweighed by any unfair prejudice resulting from admission of this evidence. 
The trial court did not abuse its discretion by admitting this disputed evidence.

 We overrule McClure's points of error and affirm the trial court's judgment.





 Jack Carter

 Justice


Date Submitted: September 12, 2008

Date Decided: October 3, 2008


Publish
1. Foreman later stated he believed McClure had lied about only being a drug dealer for nine
months. 
2. McClure reportedly admitted he had saved about $7,000.00 from these drug sales to buy a
house.
3. The trial court in McClure's case instructed the jury that it was not to consider evidence of
"any crime or other bad act" that had been admitted at trial "unless [the jury] believe[d] beyond a
reasonable doubt that the Defendant in this case committed said offense or bad act." 
4. McClure had filed an application for community supervision in this case.



ales was informed by the secretary must be granted to Chhim. It
is the burden of the movant at summary judgment to establish right to judgment as a
matter of law by refuting an element of the nonmovant's claim. Steck, 669 S.W.2d at
107-08. Notice was the only basis on which UH and Wray challenged Chhim's prima facie
case. They have not conclusively established they lacked notice; thus, they have not
defeated Chhim's prima facie case for wrongful termination.

 UH and Wray's affidavits also suggest they only had notice of an accident that
occurred at Chhim's home, which was unrelated to work. Thus, their action in terminating
Chhim would be unrelated to her claimed on-the-job injury. This evidence, however, does
nothing more than create a fact issue as to whether Chhim's continuing absence after
December 16 was due to her injury on December 15, her injury on December 16, or both. 
The evidence further shows a discrepancy regarding the nature of the injury Chhim
suffered at home December 15. Her leave request form indicates back pain as the reason,
while her deposition testimony identifies an ankle injury. The fact Chhim was injured
December 15 does not foreclose the possibility of an on-the-job injury on December 16. 
The initiation of a worker's compensation proceeding related to the latter may still have
contributed to Chhim's termination. It is a genuine issue of material fact whether Gonzales
was aware of only one or both of these injuries. 

 The fact that Gonzales was aware of an injury to Chhim, and that this influenced the
decision to terminate her employment, was established by Gonzales' affidavit. Chhim was
sent a termination notice on January 9, 1998, within three weeks of the incident. Gonzales
stated the notice was backdated to effect termination just days after the injury was
reported, because that was when Chhim's sick leave benefits had been exhausted. This
admission directly connects the timing of her termination to Chhim's injury-induced
absence. Although it is undisputed that she did not file formal worker's compensation
forms until after she received notice of termination, Chhim stated in her affidavit she had
attempted to get copies of the forms earlier. The forms were not sent to her, however, until
after she talked to Underwood on January 12, 1998. The acknowledgment by Gonzales
that Chhim's termination was timed according to her injury, combined with the inference
that Gonzales knew, through the physical plant secretary, of Chhim's injury and her intent
to file a worker's compensation claim, establish the causal connection required by Section
451.001.

 Once the employee has established a causal connection between the institution of
a worker's compensation proceeding and the adverse employment action, the burden shifts
to the employer to establish a valid, nondiscriminatory reason for that action. See Fenley,
59 S.W.3d at 319 (citing Piper v. Kimberly-Clark Corp., 970 F.Supp. 566, 574 (E.D. Tex.
1997)). The nondiscriminatory reason must demonstrate the termination was unrelated
to the employee's pursuit of worker's compensation benefits. Id. 

 UH cited poor performance, combined with the approaching end of the probationary
employment period, as the nonretaliatory basis for terminating Chhim. The summary
judgment evidence submitted by UH and Wray shows that regular staff employees must
complete a six-month probationary period. At any time during this period, the employee
may be terminated without the application of UH's discipline and dismissal policies and
procedures. UH also submitted evidence the policy included terminating probationary
employees like Chhim without following the standard policies for regular employees. No
evidence was submitted regarding what policies, if any, actually apply to probationary
employees. UH and Wray argue they have therefore established a legitimate basis for
terminating Chhim, citing this Court's decision in Fenley, 59 S.W.3d 314. In Fenley, we
held an employee's termination, pursuant to the uniform application of a reasonable
absentee policy, forecloses the possibility that the reason for termination was at least partly
due to the assertion of a worker's compensation claim. See id. at 320. We disagree the
evidence supplied in this case-proof of action coupled with a complete absence of any
policy whatsoever-is comparable to proof of behavior in conformity with a pre-established,
uniformly applicable set of standards. All the evidence provided describes the status of
probationary employees by reference to the nonapplicability of the policies that do apply
to nonprobationary employees. There is no evidence of any positive policy expressly
applicable to employees like Chhim. UH and Wray have only established that their action
in terminating Chhim was in conformity with a stated lack of policy. This is insufficient to
meet their summary judgment burden of rebutting the connection between Chhim's injury
and her termination.

 The evidence provided by UH and Wray also fails to provide any alternate
explanation for the timing of Chhim's discharge. She was hired July 27, 1997. Her six-month probationary period would extend through January 27, 1998. No explanation was
offered as to why Chhim was terminated effective December 19, 1997, beyond Gonzales'
statement that the date was tied to Chhim's absence.

 UH and Wray also submitted two negative evaluations of Chhim's performance. 
One was handwritten by Hunter, dated October 31, 1997. The other was on an official
performance review form, completed December 22, 1997 (five days after Chhim stopped
working). Chhim was retained as an employee for more than six weeks after the first
evaluation. Her termination was made effective after her injury but before the date of the
second evaluation. Even if these forms established that those responsible for her
termination believed Chhim to be an ineffective employee, UH and Wray have failed to
show the injury had no impact on the timing of their decision to terminate her. 

 In deciding a motion for summary judgment, the burden of persuasion remains
always on the movant to demonstrate entitlement to judgment as a matter of law. Chhim
has raised a fact issue, by specific fact and reasonable inference, that there is a causal
connection between her institution of a worker's compensation proceeding and her
termination. The appellees have failed to rebut that connection and have therefore failed
to establish their right to judgment as a matter of law.

 Chhim has abandoned any complaint as to her Title VII claim by failing to present
any argument to this Court. The judgment of the trial court granting summary judgment as
to the Title VII claim is affirmed.

 Summary judgment was improper as to Chhim's claim of wrongful termination,
because genuine issues of material fact remain. The judgment of the trial court granting
summary judgment to UH and Wray on the wrongful termination claim is reversed and 
remanded for further proceedings.


 Donald R. Ross

 Justice

Date Submitted: February 28, 2002

Date Decided: May 2, 2002


Publish

1. The record shows Chhim did not timely file her Title VII claim in the trial court. She
was sent a right to sue letter on July 16, 1999, granting ninety days to bring suit. She did
not add a Title VII claim to her amended petition until September 1, 2000.